**KRISTIN STANKIEWICZ**
Oregon Bar No. 066196
Kristin.Stankiewicz@gmlaw.com
**GREENSPOON MARDER LLP**
555 SE MLK Boulevard, Unit 105
Portland, OR 97214
Direct Phone Number: 971-322-0802

**JEFFREY GILBERT (Pro Hac Vice)**
Florida Bar No. 375411
Jeffrey.Gilbert@gmlaw.com
Melissa.Fernandez@gmlaw.com
**GREENSPOON MARDER LLP**
600 Brickell Avenue, 36th Floor
Miami, FL 33131
Direct Phone Number: 305-789-2761

*Counsel for Defendant Jet Quick, LLC*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF OREGON**
**EUGENE DIVISION**

| | |
|---|---|
| CHAD BARNES, individually and on behalf of all other similarly situated, | Case No.: 6:25-cv-02050-MC |
| Plaintiff, | **DEFENDANT JET QUICK, LLC'S MOTION TO COMPEL ARBITRATION OR, ALTERNATIVELY, TO DISMISS AND INCORPORATED MEMORANDUM OF LAW** |
| v. | |
| JET QUICK, LLC, | |
| Defendant. | **Request for Oral Argument** |

1
DEFENDANT JET QUICK, LLC'S MOTION TO COMPEL ARBITRATION OR,
ALTERNATIVELY, TO DISMISS AND INCORPORATED MEMORANDUM OF LAW

Defendant Jet Quick, LLC ("Jet Quick"), by and through undersigned counsel and pursuant to Fed. R. Civ. P. 7(b) and 12(b) and LR 7-1, moves to compel arbitration of the claims asserted in Plaintiff Chad Barnes's Complaint ("Complaint"), or. in the alternative, to dismiss Plaintiff's Complaint for failing to state a claim for relief. Pursuant to LR 7-1(a), counsel for Defendant Jet Quick has conferred with Plaintiff Chad Barnes's counsel via phone call and email of the basis of this Motion (and the relief sought herein) on January 22, 2026.  However, the parties were unable to resolve the issues set forth therein. The parties agree that the meet and confer requirements set forth in the Local Rules have been fully satisfied.

The Motion to Compel Arbitration or, Alternatively, to Dismiss is based upon the Incorporated Memorandum of Law in support thereof, the Declaration of Blaine Beichler and its incorporated Exhibits A and B, the other papers and pleadings on file in this action, and upon further material, evidence, and oral argument as may be presented to the Court at the time of the evidentiary hearing. Jet Quick respectfully requests the Court to conduct an evidentiary hearing on this Motion.

## TABLE OF CONTENTS

I.      INTRODUCTION..................................................................................1

II.     BACKGROUND ..................................................................................2

III.    ARGUMENT.........................................................................................3

    A.      PLAINTIFF FORMED A VALID, ENFORCEABLE
        ARBITRATION AGREEMENT WITH MDS. ................................................3

        1.      *There Is a Valid Agreement to Arbitrate.*..................................................4

        2.      *The Arbitration Agreement Delegated the Threshold Question of
              Arbitrability to the Arbitrator.* ..................................................8

    B.      PLAINTIFF HAS WAIVED THE RIGHT TO BRING A CLASS
        ACTION..................................................................................................10

    C.      THE RIGHT TO COMPEL ARBITRATION AND WAIVER OF
        CLASS ACTION CLAIMS MAY BE OBTAINED THROUGH AND
        CONVEYED BY AN INTERMEDIARY. ........................................................12

        1.      *Jet Quick, As A Third Party Beneficiary, Can Compel
              Arbitration.* .........................................................................13

        2.      *Jet Quick Can Also Enforce the Arbitration Provision Under the
              Doctrine of Equitable Estoppel.*...............................................16

    IV.     PLAINTIFF'S TEXT MESSAGE ALLEGATIONS DO NOT
        ASSERT A PRIVATE CAUSE OF ACTION. ...............................................19

    V.      PLAINTIFF'S TEXT MESSAGE ALLEGATIONS DO NOT
        ESTABLISH A CONCRETE INJURY. .......................................................20

DEFENDANT JET QUICK, LLC'S MOTION TO COMPEL ARBITRATION OR,
ALTERNATIVELY, TO DISMISS AND INCORPORATED MEMORANDUM OF LAW

## <u>TABLE OF AUTHORITIES</u>

*Page(s)*

*Cases*

*ACA Int'l v. Fed. Commc'ns Comm'n,*
   885 F.3d 687 (D.C. Cir. 2018) ............................................................................................ 12

*Arbaugh v. Y&H Corp.,*
   546 U.S. 500 (2006) ............................................................................................................ *20*

*Armstrong v. Michaels Stores, Inc.,*
   59 F.4th 1011 (9th Cir. 2023) ............................................................................................. 10

*Arthur Andersen LLP v. Carlisle,*
   556 U.S. 624 (2009) ............................................................................................................ 13

*AT&T Mobility LLC v. Concepcion,*
   563 U.S. 333 (2011) ......................................................................................................... 2, 10

*Bates v. Andaluz Waterbirth Ctr.,*
   298 Or. App. 7331 (2019) .................................................................................................. 14

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007) ............................................................................................................ 20

*Berman v. Freedom Fin. Network, LLC,*
   30 F.4th 849 (9th Cir. 2024) ................................................................................................. 5

*Bielski v. Coinbase, Inc.,*
   87 F.4th 1003 (9th Cir. 2023) ............................................................................................... 3

*Brennan v. Opus Bank,*
   796 F.3d 11250 (9th Cir. 2015) ............................................................................................ 8

*Card v. Wells Fargo Bank, N.A.,*
   611 F. Supp. 3d 1080 (D. Or. 2020) ..................................................................................... 4

*Chabolla v. ClassPass Inc.,*
   129 F.4th 1147 (9th Cir. 2025) .......................................................................................... 4, 5

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.,*
   207 F.3d 1126 (9th Cir. 2000) ............................................................................................... 3

*City of Canby v. Rinkes,*
   902 P.2d 6051 (Or. Ct. App. 1995) ....................................................................................... 4

*Clapper v. Amnesty Int'l USA,*
   568 U.S. 398 (2013) ............................................................................................................ 21

*Davis v. CVS Pharmacy, Inc.,*
   No. 4:24-cv-477-AW-MAF, 2025 WL 24911953 (N.D. Fla. Aug. 26, 2025) ........................ 19

*Drury v. Assisted Living Concepts, Inc.,*
   262 P.3d 1162 (Or. Ct. App. 2011) .................................................................................. 13, 14

*Epic Sys. Corp. v. Lewis,*
   584 U.S. 497 (2018) ......................................................................................................... 2, 10

*Erickson v. Grande Ronde Lbr. Co.,*
   162 Or. 556, on reh'g, 162 Or. 556 (Or. 1939) ...................................................................... 14

DEFENDANT JET QUICK, LLC'S MOTION TO COMPEL ARBITRATION OR,
ALTERNATIVELY, TO DISMISS AND INCORPORATED MEMORANDUM OF LAW

*Feldman v. McGuire,*
   34 Or. 309 (Or. 1899) ............................................................................................ 14

*First Options of Chicago, Inc. v. Kaplan,*
   514 U.S. 938 (1995) ................................................................................................ 4

*Fisher v. A.G. Becker Paribas Inc.,*
   791 F.2d 691 (9th Cir. 1986) ................................................................................... 3

*Gamble v. Penney Opco LLC,*
   791 F. Supp. 3d 1203 (D. Or. 2025) ............................................................... 5, 8, 9

*Godun v. JustAnswer LLC,*
   135 F.4th 699 (9th Cir. Apr. 15, 2025) .................................................................. 5, 7

*Goergen v. Black Rock Coffee Bar, LLC,*
   No. 3:22-CV-1258-SI, 2023 WL 1777980 (D. Or. Feb. 6, 2023) ................................ 3, 14, 17

*Henry Schein, Inc. v. Archer & White Sales, Inc.,*
   586 U.S. 63 (2019) ........................................................................................ 1, 3, 8

*Hess v. Seeger,*
   641 P.2d 23 (Or. Ct. App. 1982) ..................................................................... 16, 17

*Industra/Matrix Joint Venture v. Pope & Talbot, Inc.,*
   341 Or. 321 (2006) ................................................................................................. 4

*Jones v. Blackstone Med. Servs., LLC,*
   2025 WL 20427643 (C.D. Ill. July 21, 2025) ....................................................... 19

*Ken Hood Const. Co. v. Pac. Coast Const., Inc.,*
   120 P.3d 61 (Or. Ct. App. 2005) .......................................................................... 4, 5

*Marshall v. Wilson,*
   175 Or. 506 (1944) ............................................................................................... 17

*Matter of GroupMe, Inc./Skype Commc'ns S.A.R.L. Petition for Expedited Declaratory Ruling*
   *Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991,*
   29 F.C.C. Rcd. 3442 (2014) ................................................................................. 12

*McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.,*
   606 U.S. 146 (2025) .............................................................................................. 19

*Moses H. Cone v. Mercury Constr. Corp.,*
   460 U.S. 1 (1983) ................................................................................................... 4

*Murphy v. DirecTV, Inc.,*
   724 F.3d 1218 (9th Cir. 2013) .............................................................................. 12

*Newton/Boldt v. Newton,*
   86 P.3d 49 (Or. 2004) ............................................................................................. 4

*Nguyen v. Barnes & Noble Inc.,*
   763 F.3d 1171 (9th Cir. 2014) .............................................................................. 10

*Oberstein v. Live Nation Entm't, Inc.,*
   60 F.4th 505 (9th Cir. 2023) ................................................................................... 5

*O'Connor v. Uber Techs., Inc.,*
   904 F.3d 1087 (9th Cir. 2018) .............................................................................. 11

2015 Order,
   30 FCC Rcd. 7961 (2015), set aside in part by *ACA Int'l v. Fed. Commc'ns Comm'n*, 885 F.3d
   687 (D.C. Cir. 2018) ............................................................................................. 12

iii
DEFENDANT JET QUICK, LLC'S MOTION TO COMPEL ARBITRATION OR,
ALTERNATIVELY, TO DISMISS AND INCORPORATED MEMORANDUM OF LAW

*Rent-A-Center, West, Inc. v. Jackson,*
 561 U.S. 63 (2010) ........................................................................................ 3
*Ross Dress For Less, Inc. v. Makarios-Oregon, LLC,*
 180 F. Supp. 3d 745 (D. Or. 2016) ............................................................... 17
*Sisters of St. Joseph v. Russell,*
 318 Or. 370, 867 P.2d 1377 (Or. 1994) ....................................................... 13
*Spokeo Inc. v. Robins,*
 578 U.S. 330 (2016) ...................................................................................... 20
*Steel Co. v. Citizens for a Better Environment,*
 523 U.S. 83 (1998) ........................................................................................ 21
*TransUnion LLC v. Ramirez,*
 594 U.S. 413 (2021) ...................................................................................... 20
*United States v. Texas,*
 599 U.S. 670 (2023) ...................................................................................... 20
*Willis v. Nationwide Debt Settlement Group,*
 878 F. Supp. 2d 1208 (D. Or. 2012) ............................................................ 11

**Statutes**

9 U.S.C. § 3 ............................................................................................... 3, 10
9 U.S.C. § 4 ...................................................................................................... 3
9 U.S.C. §§ 1-16 .............................................................................................. 1
47 U.S.C. § 227(c)(5) .................................................................................... 19

**Rules**

Fed. R. Civ. P. 7(b) and 12(b) ..................................................................... 2, 1
Local Rule 7-1 .................................................................................................. 1

**Regulations**

47 C.F.R § 64.1200(c) ................................................................................... 19

**Other Authorities**

*Restatement (Second) of Contracts* § 17(1) (1981) ...................................... 4

DEFENDANT JET QUICK, LLC'S MOTION TO COMPEL ARBITRATION OR,
ALTERNATIVELY, TO DISMISS AND INCORPORATED MEMORANDUM OF LAW

## MEMORANDUM OF LAW

Defendant Jet Quick, by the undersigned counsel and pursuant to Federal Rules of Civil Procedure 7(b) and 12(b) and District of Oregon Local Rule 7-1, files this Motion to Compel Arbitration, or Alternatively to Dismiss Plaintiff Chad Barnes's ("Barnes" or "Plaintiff") Complaint alleging individual and class claims under the Telephone Consumer Protection Act ("TCPA").

### I.    INTRODUCTION

Plaintiff Barnes voluntarily visited an internet website, freely provided personally identifiable information to the website (e.g., his telephone number and his mother Shirenna Wilcox's information), and signed up for the goods and services the site offered. The website conspicuously displayed terms and conditions of use. Plaintiff acknowledged and agreed to the website's terms and conditions, which among other things, expressly: (1) identified Jet Quick as an intended, nonsignatory third-party beneficiary; (2) required arbitration of disputes including those involving Jet Quick; and (3) included a waiver of class actions. On the website, Plaintiff also opted in and gave consent to receive SMS text messages to Plaintiff's cellular telephone number.

As demonstrated below, by clicking the acceptance boxes and continuing to use the website, Plaintiff unequivocally manifested assent to be contacted and created a valid and enforceable "clickwrap" agreement that mandates arbitration and bars class actions. Binding legal precedent and the facts of this case inexorably lead to one conclusion – Jet Quick's Motion to Compel Arbitration must be granted for at least three reasons: (1) the website's terms contain a valid, enforceable arbitration agreement under the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16; (2) arbitrable issues exist and must be decided by the arbitrator (*Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 69 (2019)); and (3) Plaintiff knowingly waived any right to bring

1

DEFENDANT JET QUICK, LLC'S MOTION TO COMPEL ARBITRATION OR,
ALTERNATIVELY, TO DISMISS AND INCORPORATED MEMORANDUM OF LAW

or represent a class action (*AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011); *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 511 (2018)). Therefore, Jet Quick respectfully requests the Court to enforce the arbitration agreement and stay this action pending arbitration in accordance with the terms. Otherwise, Jet Quick requests the Court to dismiss the Complaint for failing to plead a private cause of action and failing to establish a concrete injury.

## II.    BACKGROUND[1]

Plaintiff visited My Daily Surge's website [https://17.mydaysurge.com/1000- check?b=back] ("MDS"). Beichler Dec. ¶ 15. MDS is a website where a user interested in daily and/or monthly giveaways enters basic information to enter prize draws and receives other optional marketing offers from MDS's marketing partners, such as Jet Quick. Beichler Dec. ¶ 3. Jet Quick partners with MDS to receive the contact information of consumers who consent to receiving marketing information from Jet Quick. Beichler Dec. ¶ 2. Only users who complete the MDS sign-up and opt-in, that is, give their express consent, are contacted by Jet Quick. Beichler Dec. ¶¶ 8, 30, 44.

On July 26, 2025, MDS received Plaintiff's opt-in and agreement to its online terms and conditions and Plaintiff's consent to receive marketing text messages on behalf of itself and its marketing partners, including Jet Quick. Beichler Dec. ¶¶ 10, 48. Jet Quick received notice of Plaintiff's opt-in and the imputed data in automated data transfers directly from MDS, and Jet Quick imported the data into its CRM (customer relationship management) platform. Beichler Dec. ¶ 7. As a result of Plaintiff's express consent and opt-in, Jet Quick sent a Welcome message

---

[1] This Motion to Compel Arbitration or, Alternatively, to Dismiss is supported by the Declaration of Blaine Beichler, which will be referenced as "Beichler Dec. ¶ ___, and/or Ex. ___ at ___."

DEFENDANT JET QUICK, LLC'S MOTION TO COMPEL ARBITRATION OR,
ALTERNATIVELY, TO DISMISS AND INCORPORATED MEMORANDUM OF LAW

to Plaintiff. Beichler Dec. ¶¶ 8, 53. Jet Quick now seeks to enforce MDS's terms, which included

a mandatory arbitration provision and a waiver of class action claims.

## III.    ARGUMENT

### A.    PLAINTIFF FORMED A VALID, ENFORCEABLE ARBITRATION AGREEMENT WITH MDS.

The Federal Arbitration Act ("FAA") requires courts to stay any action that is governed by

a valid arbitration agreement. 9 U.S.C. § 3. On a motion to compel arbitration, the Court is tasked

with addressing 'two gateway arbitrability issues: '(1) whether a valid agreement to arbitrate

exists, and if it does, (2) whether the agreement encompasses the dispute at issue.'" *Bielski v.

Coinbase, Inc.*, 87 F.4th 1003, 1009 (9th Cir. 2023) (quoting *Chiron Corp. v. Ortho Diagnostic

Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000)).[2]

Under the FAA, courts need only recognize the validity of the arbitration agreement to

send the matter to arbitration, where the parties 'clearly and unmistakably" delegated that

threshold question of arbitrability to the arbitrator. *Henry Schein, Inc. v. Archer & White Sales,

Inc*., 586 U.S. 63, 69 (2019) (cleaned up); *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 70

(2010). 'When the making of the arbitration agreement is at issue, the court shall proceed

summarily to the trial thereof." *Goergen v. Black Rock Coffee Bar, LLC*, No. 3:22-CV-1258-SI,

2023 WL 1777980, at *2 (D. Or. Feb. 6, 2023) (citing to 9 U.S.C. § 4) (internal citations omitted).

"The court shall hear and determine such issue if the party alleged to be in violation of the

---

[2] A third element courts consider is whether Defendant waived the right to arbitrate. Jet Quick has
not acted inconsistently with the right to seek arbitration, and Plaintiff has suffered no prejudice
in Jet Quick's doing so. "A party seeking to prove waiver of a right to arbitration must demonstrate:
(1) knowledge of an existing right to compel arbitration; (2) acts inconsistent with that existing
right; and (3) prejudice to the party opposing arbitration resulting from such inconsistent acts."
*Fisher v. A.G. Becker Paribas Inc*., 791 F.2d 691, 694 (9th Cir. 1986).

DEFENDANT JET QUICK, LLC'S MOTION TO COMPEL ARBITRATION OR,
ALTERNATIVELY, TO DISMISS AND INCORPORATED MEMORANDUM OF LAW

agreement does not demand a jury trial." *Id.* (internal citations omitted).

As set forth herein, MDS made an offer and Plaintiff assented to and accepted its terms, thereby forming a valid agreement, including an agreement to arbitrate all disputes, which answers the first gateway question of whether an arbitration agreement exists. The terms Plaintiff accepted also clearly and unmistakenly delegated the answer to the second gateway issue to the arbitrator.

### 1.    There Is a Valid Agreement to Arbitrate.

To determine whether a valid agreement to arbitrate exists, federal courts "apply ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *Card v. Wells Fargo Bank, N.A.,* 611 F. Supp. 3d 1080, 1083 (D. Or. 2020) (same); *Chabolla v. ClassPass Inc.*, 129 F.4th 1147, 1154 (9th Cir. 2025)." In doing so, however, 'questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration,' and 'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration[.]'" *Industra/Matrix Joint Venture v. Pope & Talbot, Inc.*, 341 Or. 321, 332 (2006) (citing *Moses H. Cone v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983)).

To form a contract under Oregon law, courts "examine the parties' objective manifestations of intent, as evidenced by their communications and acts." *Ken Hood Const. Co. v. Pac. Coast Const., Inc.*, 120 P.3d 6, 11 (Or. Ct. App. 2005), *opinion adhered to as modified on reconsideration*, 126 P.3d 1254 (Or. Ct. App. 2006). "Contract formation requires 'a bargain in which there is a manifestation of mutual assent to the exchange and a consideration.'" *Id.* (citing to *Restatement (Second) of Contracts* § 17(1) (1981)); *Newton/Boldt v. Newton*, 86 P.3d 49, 52 (Or. 2004) (explaining that 'whether parties enter into a contract does not depend on their uncommunicated subjective understanding; rather, it depends on whether the parties manifest assent to the same express terms.") (citing *City of Canby v. Rinkes*, 902 P.2d 605, 611 (Or. Ct.

DEFENDANT JET QUICK, LLC'S MOTION TO COMPEL ARBITRATION OR,
ALTERNATIVELY, TO DISMISS AND INCORPORATED MEMORANDUM OF LAW

App. 1995)).*"*Mutual assent may be inferred from the conduct of the parties.*"* *Ken Hood*, 120 P.3d at 11.

Further, the same principles apply to online agreements. *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 855-56 (9th Cir. 2024)). There are at least four types of online contracts: (1) browsewrap, (2) clickwrap, (3) scrollwrap, and (4) sign-in wrap, each of which purports to bind users through different "assent" mechanisms. *Chabolla*, 129 F.4th at 1154. In a clickwrap agreement, like the one in this case, the website presents its terms of use in a "pop-up screen" or hyperlink and the user accepts those terms by clicking or checking a box manifesting agreement. *Id.*; *Gamble v. Penney Opco LLC*, 791 F. Supp. 3d 1203, 1208 (D. Or. 2025) (explaining that clickwrap agreements present "website users with a box which the user may choose to affirmatively check and state 'I agree . . . .'"). Courts routinely enforce clickwraps. *Id.*; see *Oberstein v. Live Nation Entm't, Inc.*, 60 F.4th 505, 517 (9th Cir. 2023) (finding it "straightforward" on the facts that notices on the page "explicitly alert the user by creating an account, signing in, or purchasing a ticket, and proceeding to the next page," the user agreed to the terms.").[3]

---

[3] Alternatively and additionally, when it comes to browsewrap agreements, that is, when the terms are "disclosed only through a hyperlink" and the user "supposedly manifests assent to those terms simply by continuing to use the website," the court can find an enforceable contract "based on inquiry notice theory only if: (1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms." *Gamble v. Penney Opco LLC*, 791 F. Supp. 3d 1203, 1208 (D. Or. 2025) (citing *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 853 (9th Cir. 2024)). Courts look at the "visual conspicuousness" of a link, "analyz[ing] the size, color, and location of the hyperlink in relation to the overall webpage" and using "common sense." *Gamble v. Penney Opco LLC*, 791 F. Supp. 3d 1203, 1211 (D. Or. 2025) (citing *Godun v. JustAnswer LLC*, 135 F.4th 699, 709-10 (9th Cir. Apr. 15, 2025)).

DEFENDANT JET QUICK, LLC'S MOTION TO COMPEL ARBITRATION OR,
ALTERNATIVELY, TO DISMISS AND INCORPORATED MEMORANDUM OF LAW

Here, the Declaration of Blaine Beichler walks the Court through Plaintiff's opt-in and consent on MDS's website. Beichler Dec. ¶¶ 10-37. Plaintiff completed the voluntary questions by filling in his mother's email address and clicking "Continue," filling in his phone number and clicking "Continue," and then filled in additional information including his mother's first name, last name, full address, date of birth, and gender, and clicking "Continue." *Id.* Right below the question asking for Plaintiff's email address and right above the "Continue" button were clear and conspicuous terms stating that by clicking "Continue," Plaintiff agrees to MDS's Terms and Conditions, which includes mandatory arbitration, Privacy Policy, and the inclusion of partners that Plaintiff was opting in to receive communications from:



Beichler Dec. ¶ 18; Ex. A at 2. This properly formed a clickwrap agreement when Plaintiff entered the information and clicked "Continue." Also, these terms included hyperlinks to the Terms and Conditions and Privacy Policy as well for Plaintiff to access.

After Plaintiff entered his mother's email address and pressed "Continue," he landed on the next page that asks for a phone number and states by clicking "Continue," Plaintiff agrees to

DEFENDANT JET QUICK, LLC'S MOTION TO COMPEL ARBITRATION OR,
ALTERNATIVELY, TO DISMISS AND INCORPORATED MEMORANDUM OF LAW

MDS's Terms and Conditions, which includes mandatory arbitration, Privacy Policy, and the partners that Plaintiff was opting in to receive text and call communications from:



Beichler Dec. ¶ 21; Ex. A at 3. Again, Plaintiff entered a phone number and pressed "Continue," manifesting his assent to the Terms and Conditions, "including mandatory arbitration, and for resolving disputes and TCPA claims[s]" and providing his express consent for subsidiaries and marketing partners of MDS to contact Plaintiff. *Id.*

Therefore, Plaintiff had actual notice of MDS's Terms and Conditions and voluntarily agreed to resolve disputes through arbitration rather than litigation, including disputes with named partners such as Jet Quick. This includes Plaintiff's waiving his right to assert a class action. Beichler Dec. ¶¶ 40-42. The notices were not visually obscured by page clutter or pop-ads, and the actual size, placement, and colors used enhance the contrasts made the Site more visually calming. *See* Beichler Dec. ¶¶ 18, 21, 25-26, 38-45. The Terms were laid out with proportionate lettering and font and sufficiently set apart and written in plain language to be easily understood. *Id.* The hyperlinks led Plaintiff to the Terms and Conditions in full, which also fit the same

7

DEFENDANT JET QUICK, LLC'S MOTION TO COMPEL ARBITRATION OR,
ALTERNATIVELY, TO DISMISS AND INCORPORATED MEMORANDUM OF LAW

description. *Id.*

Finally, the parties have the capacity to contract, and there is nothing unconscionable or contrary to public policy in the process or agreement to arbitrate or consent to be called. As presented to Plaintiff and every other user, Plaintiff had the freedom to review, read, and digest the notices and disclosures in the terms, including the arbitration provision and waiver of class action claims.

Plaintiff is silent in the Complaint as to MDS and the terms Plaintiff agreed to. In Plaintiff's mind and Complaint, how Jet Quick came to know of Plaintiff's interest in its services, how Jet Quick obtained Plaintiff's (and his mother's) personal information, including Plaintiff's cellular number, and Plaintiff's consent to receive text messages, is irrelevant. That belief is misplaced. Ignoring the terms does not make them irrelevant. In the face of Plaintiff's express actions of entering personal information and clicking the "Continue" buttons, Plaintiff clearly and unmistakably formed an online agreement with MDS and Jet Quick, MDS's third-party beneficiary, and Jet Quick can enforce that agreement and compel mandatory arbitration.

### 2. The Arbitration Agreement Delegated the Threshold Question of Arbitrability to the Arbitrator.

Once a court finds an agreement between the parties, it then decides whether the immediate dispute is arbitrable under that agreement, unless the parties "clearly and unmistakably" delegated that threshold question of arbitrability to the arbitrator. *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 69 (2019); *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) (same). This can be found if the arbitration agreement refers to the American Arbitration Association ("AAA") rules. *See Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015); *Gamble v. Penney Opco LLC*, 791 F. Supp. 3d 1203, 1213 (D. Or. 2025). Although there is a Ninth Circuit split as to

DEFENDANT JET QUICK, LLC'S MOTION TO COMPEL ARBITRATION OR,
ALTERNATIVELY, TO DISMISS AND INCORPORATED MEMORANDUM OF LAW

whether implementing the AAA Rules applies to contracts involving at least one unsophisticated party, *Gamble*, 791 F. Supp. 3d at 1213-14 (D. Or. 2025), here, the Terms clearly and unmistakably delegate the arbitrability question to the arbitrator, not only by the incorporation of the AAA rules, but by its clear and unambiguous language of the scope of arbitration, the types of disputes covered, and the applicable AAA rules:

> **BY AGREEING TO THIS ARBITRATION AGREEMENT, YOU ARE GIVING UP YOUR RIGHT TO GO TO COURT, INCLUDING YOUR RIGHT TO A JURY TRIAL.** Should a dispute arise concerning the **Website, Promotions, Content, the terms and conditions of the Agreement or the breach of same by any party hereto, including our Marketing Partners**: (a) the parties agree to submit their dispute for resolution by arbitration before a reputable arbitration organization as mutually agreed upon by the parties in New York, New York, in **accordance with the then-current Commercial Arbitration rules of the American Arbitration Association**. . . .

Beichler Dec. ¶ 42; Ex. B at 7-8 (emphasis added).

Plaintiff primarily alleges that Jet Quick violated the TCPA by sending "text messages to Plaintiff's cellular telephone number" that were not consented to and that were sent after Plaintiff registered the number with the Do-Not-Call ("DNC") Registry. Compl. ¶¶ 19, 22, 25. The MDS Terms clearly state:

> These Terms contain a mandatory arbitration provision, as detailed below, that **requires you to arbitrate, individually, all disputes or claims that you may have with us, related parties, advertisers, including telemarketing partners, and persons with whom we share your personal information where you have given us your consent to do so ("Marketing Partners"), all of whom are third-party beneficiaries of the mandatory arbitration provision.** Thus, for example**, if you provide prior express written consent to be contacted via telemarketing or SMS/text messaging, any claims that you may have regarding any telemarketing or SMS/text messages that you receive from us or our Marketing Partners are subject to the mandatory arbitration provision.**

Beichler Dec. ¶ 41; Ex. B at 1-2 (emphasis added).

DEFENDANT JET QUICK, LLC'S MOTION TO COMPEL ARBITRATION OR, ALTERNATIVELY, TO DISMISS AND INCORPORATED MEMORANDUM OF LAW

In fact, the Terms go even further to emphasize which disputes the arbitration provision applies to:

> ***For the avoidance of doubt and without limiting the foregoing, you agree to arbitrate any dispute related to any emails, text messages or telephone calls you may receive from us or our Marketing Partners in conjunction with your interactions with us, our Website, or any Website Promotions.***

*Id.* (emphasis added). Because the dispute over consent falls within the scope of the agreement, which includes reference to any claims against communications received from Marketing Partners like Jet Quick, those issues are for the arbitrator to decide. *Id.*

Further, since the Terms state the governing law is New York law, Ex. B at 6, New York courts follow the same procedures when interpreting an arbitration agreement, "requir[ing] federal district courts to stay judicial proceedings and compel arbitration of claims covered by a written and enforceable arbitration agreement." *Nguyen v. Barnes & Noble Inc.,* 763 F.3d 1171, 1175 (9th Cir. 2014) (citing the FAA, U.S.C. § 3) (discussing New York law based on the choice of law provision). "The FAA limits the district court's role to determining whether a valid arbitration agreement exists, and whether the agreement encompasses the disputes at issue." *Id.*

Therefore, Plaintiff and MDS, and Jet Quick as a third-party beneficiary, clearly and unmistakably delegated the threshold question of arbitrability to the arbitrator, and the Court should compel arbitration.

**B.      PLAINTIFF HAS WAIVED THE RIGHT TO BRING A CLASS ACTION.**

Under Supreme Court and Ninth Circuit precedent, a waiver of class action provision must be enforced. *See AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011) (holding that the Federal Arbitration Act preempts state law regarding the unconscionability of class arbitration waivers in consumer contracts); *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 524-25 (2018); *Armstrong v.*

DEFENDANT JET QUICK, LLC'S MOTION TO COMPEL ARBITRATION OR,
ALTERNATIVELY, TO DISMISS AND INCORPORATED MEMORANDUM OF LAW

*Michaels Stores, Inc.*, 59 F.4th 1011, 1013 (9th Cir. 2023) ("While discovery was ongoing, the Supreme Court decided *Epic Systems*, overruling Ninth Circuit precedent and holding that arbitration agreements that require individual arbitration, rather than class or collective actions, are enforceable under the Federal Arbitration Act."); *O'Connor v. Uber Techs., Inc.*, 904 F.3d 1087, 1094 (9th Cir. 2018)); *Willis v. Nationwide Debt Settlement Group*, 878 F. Supp. 2d 1208, 1218 (D. Or. 2012) (explaining that "a waiver for services that appears on the first page of a two-page agreement, is referenced in bold type in a paragraph set off in bold, and does not otherwise limit claims brought by putative plaintiffs" is not unconscionable as a class action waiver).

The arbitration agreement contains an agreement that Plaintiff agreed to "**not bring, join or participate in any class action lawsuit** as to any claim, dispute or controversy that [he] may have against Company . . . and **its Marketing Partners as it relates to the Website**." Beichler Dec. ¶ 42; Ex. B. at 7 (emphasis added). Further, it continues by stating:

> *YOU UNDERSTAND THAT BY AGREEING TO THIS ARBITRATION AGREEMENT, WHICH CONTAINS THIS CLASS ACTION WAIVER, YOU MAY ONLY BRING CLAIMS AGAINST US AND OUR MARKETING PARTNERS IN AN INDIVIDUAL CAPACITY AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS ACTION OR REPRESENTATIVE PROCEEDING.*

Beichler Dec. ¶ 42, Ex. B at 8 (emphasis in original).

Thus, because Plaintiff accepted and entered into an enforceable agreement with MDS, and Jet Quick is a third-party beneficiary of the agreement, the Court must also enforce the class action waiver and dismiss the class action claims of the Complaint.

DEFENDANT JET QUICK, LLC'S MOTION TO COMPEL ARBITRATION OR,
ALTERNATIVELY, TO DISMISS AND INCORPORATED MEMORANDUM OF LAW

## C.    THE RIGHT TO COMPEL ARBITRATION AND WAIVER OF CLASS ACTION CLAIMS MAY BE OBTAINED THROUGH AND CONVEYED BY AN INTERMEDIARY.

As a third-party beneficiary of MDS, Jet Quick can enforce the agreement and its terms, including the right to compel arbitration and the waiver of class action claims. The TCPA does not prohibit a caller from obtaining a consumer's prior express consent through an intermediary. *See* 2015 Order, 30 FCC Rcd. 7961 (2015), set aside in part by *ACA Int'l v. Fed. Commc'ns Comm'n*, 885 F.3d 687 (D.C. Cir. 2018); *see also Matter of GroupMe, Inc./Skype Commc'ns S.A.R.L. Petition for Expedited Declaratory Ruling Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 29 F.C.C. Rcd. 3442, 3444 (2014) ("[A] consumer's prior express consent may be obtained through and conveyed by an intermediary."); *Murphy v. DirecTV, Inc.*, 724 F.3d 1218, 1229 (9th Cir. 2013) ("The United States Supreme Court has held that a litigant who is not a party to an arbitration agreement may invoke arbitration under the FAA if the relevant state contract law allows the litigant to enforce the agreement.") (cleaned up).

Here, to obtain express consent from Plaintiff, MDS's website presented Plaintiff with multiple clear disclosures stating that by filling in Plaintiff's (and his mother's) information and clicking the "Continue" buttons, Plaintiff agreed to receive text messages at the phone number provided and agreed to the terms of the website. Beichler Dec. ¶¶ 16-36. Plaintiff then chose to provide a phone number, including additional personal information of his mother, and pressed "Continue" multiple times.[4] *Id*. Immediately above the "Continue" button, the page made clear that Plaintiff was (1) agreeing to MDS's terms, which includes a mandatory arbitration clause and a waiver of class action lawsuits, and (2) consenting to receive emails, calls, and text messages

---

[4] The IP address of the device used for the opt-in is consistent with Plaintiff's allegation that Plaintiff resides in Lane County, Oregon. Beicher Dec. ¶ 54; Compl. ¶ 6.

DEFENDANT JET QUICK, LLC'S MOTION TO COMPEL ARBITRATION OR, ALTERNATIVELY, TO DISMISS AND INCORPORATED MEMORANDUM OF LAW

from MDS and its marketing partners and/or subsidiaries. Beichler Dec. ¶ 21, Ex. A at 3. The hyperlinked "Subsidiaries" text opens to a screen called "Subsidiary Hyperlink - Unified Marketing Partners." Beichler Dec. ¶¶ 24-26. The "Unified Marketing Partners" page explains MDS's relationship with certain partner companies which it calls "Marketing Partners" and provided a list of the Marketing Partners, which includes Jet Quick as "JET / Jet Quick." *Id.*

If Plaintiff did not click the "Continue" buttons and consent to the Terms and Conditions, then Plaintiff's information would not be shared with MDS and/or any of its marketing partners, including Jet Quick. Beichler Dec. ¶ 30. When Plaintiff assented to the Terms and gave consent to be texted by MDS and/or its marketing partners, MDS notified Jet Quick. *Id.* Jet Quick received Plaintiff's opt-in, consent, and his and his mother's personal information, including their phone number, email, address, full name, and date of birth. *Id.* ¶¶ 51-54. After receiving Plaintiff's consent to the Terms and to receive communications, Jet Quick sent a Welcome message. *Id.* ¶¶ 9, 53.

Now, Jet Quick is being sued under the TCPA by Plaintiff, and Jet Quick can enforce MDS's terms as a nonsignatory[5] under two separate theories: as a third-party beneficiary and under the doctrine of equitable estoppel.

### 1.    *Jet Quick, As A Third Party Beneficiary, Can Compel Arbitration.*

The FAA permits nonsignatories to enforce arbitration agreements under state-law principles, such as third-party beneficiary status. *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624,

---

[5] In *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009), "'traditional principles' of state law allow a contract to be enforced by or against nonparties to the contract through 'assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel . . . .'" Jet Quick is only arguing two of these here because once a valid arbitration agreement exists, this is an issue delegated to the arbitrator.

DEFENDANT JET QUICK, LLC'S MOTION TO COMPEL ARBITRATION OR,
ALTERNATIVELY, TO DISMISS AND INCORPORATED MEMORANDUM OF LAW

630 (2009) ("[A] litigant who was not a party to the relevant arbitration agreement may invoke §

3 if the relevant state contract law allows him to enforce the agreement.").

"Where parties enter into a contract and intend to benefit a third party, the third party may

assert a claim on the promise made for his or her benefit." *Drury v. Assisted Living Concepts, Inc.*,

262 P.3d 1162, 1165 (Or. Ct. App. 2011); *Sisters of St. Joseph v. Russell*, 318 Or. 370, 374-75,

867 P.2d 1377 (Or. 1994). "In such case the third party acquires an equitable interest in the

property, fund, or thing; and the law, acting upon the relationship of the parties and their treatment

of the fund, establishes the requisite privity, creates a duty, and implies a promise which will

support the action[.]" *Drury*, 262 P.3d 1162, 1165 (Or. Ct. App. 2011) (citing *Feldman v. McGuire*,

34 Or. 309, 311 (Or. 1899)) (internal citations omitted).

"In other words, the law implies a relationship between the contracting parties and the

intended third-party beneficiary." *Id.* Further, "[w]here the third-party beneficiary seeks to enforce

rights under a contract, the beneficiary's assent to be bound by the contract may be presumed."

*Id.*; *Erickson v. Grande Ronde Lbr. Co.,* 162 Or. 556, 576-78, *on reh'g,* 162 Or. 556 (Or. 1939)

(finding a third party "beneficiary's assent is presumed from his assertion of rights under the

contract"). Further, for the third-party beneficiary status to apply, the nonsignatory "must have

'manifested assent to be bound by the agreement . . . .'" *Goergen v. Black Rock Coffee Bar, LLC*,

No. 3:22-CV-1258-SI, 2023 WL 1777980, at *9 (D. Or. Feb. 6, 2023) (citing *Bates v. Andaluz

Waterbirth Ctr.*, 298 Or. App. 733, 741 (2019));

Here, there is no doubt that Jet Quick was intended to benefit from the Terms because on

the page asking Plaintiff for his phone number, the disclosures right above the "Continue" button

explain that:

DEFENDANT JET QUICK, LLC'S MOTION TO COMPEL ARBITRATION OR,
ALTERNATIVELY, TO DISMISS AND INCORPORATED MEMORANDUM OF LAW

By selecting "Continue", I provide my ESIGN signature and **express consent for MyDailySurge, Unified Marketing Partners & its Subsidiaries . . . to contact me at the phone number I provided for marketing and transactional messages**, including personal finance, benefits & sweepstakes, via text and calls, which mat use an automated, manual, prerecorded, or AI technology, until I revoke consent. This applies **even if my number is on a "Do Not Call" list**. . . . **I have read and agree to the Terms and Conditions, including mandatory arbitration, and for resolving disputes and TCPA claim.**

Beichler Dec. ¶¶ 21-22, Ex. A at 3. Right after MDS discloses in clear, black font of the consent to communications from marketing partners and/or subsidiaries, the disclosure states that there is a mandatory arbitration provision and for TCPA claims. *Id.*

Further, clicking on the "Subsidiaries" hyperlink expressly identifies Jet Quick by name as a beneficiary of the MDS website, which was present on July 26, 2025. Beichler Dec. ¶¶ 25-26. The hyperlink even explains MDS's relationship with certain partner companies, including Jet Quick, and again states that by opting in to MDS's wesbite, "you acknowledge your consent to be contacted, by the [] listed entities, at the phone number you provided, for marketing and transactional messages via text and calls . . . which shall apply even if your number is on a Do-Not-Call list . . . ." Beichler Dec. ¶¶ 25-26, Ex. A at 4.

Even more prominently, the hyperlink states the intent to bind Jet Quick to arbitration agreement:

You further acknowledge that the Terms and Conditions located on the Source Page contain **provisions for mandatory arbitration and waiver of class action lawsuits** for resolving disputes and **by providing your consent** on the Source Page, you acknowledge **that the below listed entities may enforce the Terms and Conditions**, including the above-referenced provisions, against you.

*Id.*, Ex. A at 4.

DEFENDANT JET QUICK, LLC'S MOTION TO COMPEL ARBITRATION OR,
ALTERNATIVELY, TO DISMISS AND INCORPORATED MEMORANDUM OF LAW

When looking at the first page of the Terms and Conditions, Plaintiff was alerted in bold, capital lettering that marketing partners can enforce the mandatory arbitration provision and the waiver of class actions provision:

**MANDATORY ARBITRATION & WAIVER OF RIGHT TO CLASS ACTION**

These Terms contain a mandatory arbitration provision, as detailed below, that **requires you to arbitrate, individually, all disputes or claims that you may have with us, related parties, advertisers, including telemarketing partners, and persons with whom we share your personal information where you have given us your consent to do so ("Marketing Partners"), all of whom are third-party beneficiaries of the mandatory arbitration provision**. Thus, for example, if you provide prior express written consent to be contacted via telemarketing or SMS/text messaging**, any claims that you may have regarding any telemarketing or SMS/text messages that you receive from us or our Marketing Partners are subject to the mandatory arbitration provision**. The mandatory arbitration provision also waives your right to participate in a class action or multi-party arbitration.

And it adds that:

*For the avoidance of doubt and without limiting the foregoing, you agree to arbitrate any dispute related to any emails, text messages or telephone calls you may receive from us or our Marketing Partners in conjunction with your interactions with us, our Website, or any Website Promotions.*

Beichler Dec. ¶ 41, Ex. B at 1-2 (emphasis added).

Under MDS's own Terms, Jet Quick, as a marketing partner, is a "third-party beneficiar[y] of the mandatory arbitration provision" which "also waives your right to participate in a class action . . . ." *Id.* Jet Quick, as a nonsignatory, can enforce the arbitration provision and class action waiver provision as a third-party beneficiary.

**2.    *Jet Quick Can Also Enforce the Arbitration Provision Under the Doctrine of Equitable Estoppel.***

Under Oregon law, to establish an affirmative defense of equitable estoppel or estoppel by conduct, the defendant must establish:

16

DEFENDANT JET QUICK, LLC'S MOTION TO COMPEL ARBITRATION OR,
ALTERNATIVELY, TO DISMISS AND INCORPORATED MEMORANDUM OF LAW

> (1) a false representation, (2) made with knowledge of the facts, and (3) the other party must have been ignorant of the truth; (4) it must have been made with the intention that it should be acted upon by the other party; and (5) the other party must have been induced to act upon it.

*Hess v. Seeger*, 641 P.2d 23, 33 (Or. Ct. App. 1982). "Although the elements set out above would seem to require proof of actual intent, and perhaps even a fraudulent representation, *the cases do not require so much*." *Id.* (emphasis added) (explaining proof of intent and designated fraud is not required, but the circumstances must show a sort of inducement or belief). "It is not necessary to the existence of an equitable estoppel that there should exist a design to deceive or defraud, but it is sufficient if the person against whom estoppel is asserted by his silence or representation has created a belief of the existence of a state of facts which it would be unconscionable to deny." *Id.* (citation omitted).

The party seeking to enforce the doctrine must "plead facts . . . which demonstrate why the opposing party should not be permitted to avail itself of a particular position. This includes the behavior relied upon, reasonable reliance on the pleading party's part and a resulting change in position." *Id.* at 32 (Or. Ct. App. 1982); *see Goergen v. Black Rock Coffee Bar, LLC*, No. 3:22-CV-1258-SI, 2023 WL 1777980, at *9 (D. Or. Feb. 6, 2023) (citing *Marshall v. Wilson*, 175 Or. 506, 518 (1944)) (internal citations omitted) ("[T]he party invoking the doctrine must still 'show that he was entitled to rely upon such conduct, action or silence, that he acted thereupon and would be prejudiced if the doctrine of estoppel were not applied.'"). "Estoppel is an equitable doctrine invoked to avoid injustice in particular cases." *Ross Dress For Less, Inc. v. Makarios-Oregon, LLC*, 180 F. Supp. 3d 745, 778 (D. Or. 2016), *aff'd*, No. 21-35106, 2022 WL 2643376 (9th Cir. July 8, 2022) (citing *Hess*).

As explained in Mr. Beichler's Declaration, Jet Quick partners with MDS to receive contact information from users who consented to receive information from MDS and its third-party

DEFENDANT JET QUICK, LLC'S MOTION TO COMPEL ARBITRATION OR, ALTERNATIVELY, TO DISMISS AND INCORPORATED MEMORANDUM OF LAW

marketing partners and/or subsidiaries like Jet Quick. Beicher Dec. ¶ 2. Jet Quick reviews the consumer opt-in flows, Terms and Conditions, and Privacy Policy before they are published on MDS's website. Beicher Dec. ¶¶ 4-5. MDS is contractually required to inform Jet Quick of any proposed changes to those opt-in flows, Terms and Conditions, and Privacy Policy before they are published on MDS's website. *Id.* On or prior to the time of Plaintiff's opt-in, July 26, 2025, Jet Quick relied on the fact that any user of MDS's website, including Plaintiff, would be bound to the arbitration provision and that Jet Quick could enforce such provision. Beicher Dec. ¶¶ 7-9. Therefore, it would be unjust for Plaintiff to prevent Jet Quick from relying on and enforcing MDS's terms, including the mandatory arbitration agreement and the waiver of class action provision.

Further, the relationship here between Plaintiff and Jet Quick arose *solely* out of Plaintiff's agreement to the terms of the MDS website. Beicher Dec. ¶¶ 7-8, 30. As the foregoing shows, MDS clearly intended for marketing partners, such as Jet Quick, to contact users of its website, including Plaintiff. Beicher Dec. ¶¶ 2, 18, 21, 25-26, 39, 41-43. The TCPA claims fall within the scope of the arbitration provision, which states Plaintiff's claims against marketing partners, like Jet Quick, require arbitration. Beicher Dec. ¶¶ 41-42, Ex. B at 1-2. Plaintiff's statutory claims against Jet Quick are intimately found in and intertwined with MDS's terms and Jet Quick's conduct (*e.g.*, acting on the consent Plaintiff gave to MDS under the clear disclosure that Plaintiff was going to be to contacted by marketing partners or companies through text message or calls). Plaintiff. Beicher Dec. ¶¶ 2, 18, 21, 25-26, 39, 41-43. And Jet Quick would not have had Plaintiff's information unless Plaintiff agreed to the Terms and Conditions and to receive communications from marketing partners like Jet Quick. Plaintiff. Beicher Dec. ¶ 30. Plaintiff's TCPA claims are based on the same facts – Jet Quick's alleged failure to obtain express written consent before

DEFENDANT JET QUICK, LLC'S MOTION TO COMPEL ARBITRATION OR,
ALTERNATIVELY, TO DISMISS AND INCORPORATED MEMORANDUM OF LAW

sending text messages to Plaintiff as discussed above. These facts lead to no other conclusion other than that nonsignatory Jet Quick can enforce against Plaintiff MDS's Terms, including the arbitration provision and waiver of class action claims.

## IV.    PLAINTIFF'S TEXT MESSAGE ALLEGATIONS DO NOT ASSERT A PRIVATE CAUSE OF ACTION.

Plaintiff complains that Defendant delivered "at least three *text messages* to Plaintiff's cellular telephone number . . . ." Compl. ¶ 19 (emphasis added). The text messages allegedly violated 47 U.S.C. § 227(c)(5) and its regulations. Compl. ¶¶ 1-2, 63-65. If texts were sent, there is no violation because, under the federal statute, text messages are permissible.

Section 227(c)(5), on which Plaintiff rest his claims, by the plain and unambiguous language of the statute, ***does not apply to text messages***. *See Jones v. Blackstone Med. Servs., LLC*, 2025 WL 2042764, at *3 (C.D. Ill. July 21, 2025). There is no private right of action for claims about text messages under 47 U.S.C. 227(c)(5). *See Davis v. CVS Pharmacy, Inc*., No. 4:24-cv-477-AW-MAF, 2025 WL 2491195, at *1-3 (N.D. Fla. Aug. 26, 2025) (acknowledging that "no ordinary person would think of a text message as a 'telephone call,'" and holding that plaintiff's 47 U.S.C. § 227(c)(5) claim failed because "he alleged receiv[ed] only text messages.[,]" which "are not telephone calls[.]"); *see also Jones*, 2025 WL 2042764, at *3 (holding that 47 U.S.C. § "227(c)(5) does not apply to text messages.").

Further, Plaintiff's claims of the Do-Not-Call provision under 47 C.F.R § 64.1200(c) fail because this provision is considered an interpretation of the TCPA. As the Supreme Court made clear recently in *McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.,* 606 U.S. 146, 155 (2025), a district court must independently determine for itself whether the Federal Communications Commission's ("FCC") interpretation of a statute is correct. District courts are

DEFENDANT JET QUICK, LLC'S MOTION TO COMPEL ARBITRATION OR,
ALTERNATIVELY, TO DISMISS AND INCORPORATED MEMORANDUM OF LAW

not bound by the FCC's interpretation but instead must determine the meaning of the law under ordinary principles of statutory interpretation, while affording appropriate respect to the agency's interpretation. *Id.* Therefore, Plaintiff's claims must be dismissed for failing to establish a private cause of action.

## V.    PLAINTIFF'S TEXT MESSAGE ALLEGATIONS DO NOT ESTABLISH A CONCRETE INJURY.

Plaintiff suffered no harm and no injury in fact, even if Plaintiff received the alleged texts. Plaintiff has the burden but failed to allege standing in support of subject matter jurisdiction. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 430-31 (2021). "[A] case or controversy can exist only if a plaintiff has standing to sue." *United States v. Texas*, 599 U.S. 670, 675 (2023). Irrespective of Plaintiff's burden, district courts have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006).

Subject-matter jurisdiction can never be forfeited or waived because it involves a court's power to hear a case. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006). "To establish the 'irreducible constitutional minimum of standing,' [plaintiff here] must show [Plaintiff has] '(1) suffered an injury-in-fact, (2) that is fairly traceable to the challenged action of [Jet Quick], and (3) is likely to be redressed by a favorable judicial decision.'" *Spokeo Inc. v. Robins*, 578 U.S. 330, 338 (2016); *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Plaintiff here cannot "allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III." *Spokeo*, 578 U.S. at 342. Other than text messages allegedly sent to Plaintiff by Jet Quick or allegedly received by members of the putative class, Plaintiff makes generic injury allegations regarding "an invasion of privacy, an intrusion

DEFENDANT JET QUICK, LLC'S MOTION TO COMPEL ARBITRATION OR,
ALTERNATIVELY, TO DISMISS AND INCORPORATED MEMORANDUM OF LAW

into his life, and a private nuisance." Compl. ¶ 27. Jet Quick recognizes that the federal pleading standard "does not require 'detailed factual allegations,' but [also understands that it does] demand [] more than [what we have here] an unadorned, the-defendant-unlawfully-harmed-me accusation." *Twombly*, 550 U.S. at 555. Plaintiff "cannot manufacture standing merely by inflicting harm on [himself,]" by using a phone, *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 416 (2013), including by "bringing suit for the cost of bringing suit." *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 107 (1998) (abrogation on other grounds).

Therefore, Plaintiff's allegations are insufficient to establish standing.

**CONCLUSION**

Based on the foregoing, and on any additional briefing or evidentiary hearing on the motion, this Court must enter an Order that directs Plaintiff to proceed to mandatory arbitration and stays this proceeding until such arbitration has been had in accordance with the terms of the agreement, or the Court dismisses the action for failing to state a claim for relief.

**CERTIFICATE OF GOOD FAITH CONFERRAL**

Defendant JET QUICK, LLC herein certifies that counsel for the parties conferred in good faith on January 22, 2026 and that Plaintiff Barnes's counsel opposes the relief sought.

**REQUEST FOR EVIDENTIARY HEARING**

Defendant JET QUICK, LLC respectfully requests the Court to hold an evidentiary hearing on this Motion.

**CERTIFICATE OF COMPLIANCE WITH WORD COUNT**

This brief complies with the applicable word-count limitation under LR 7-2(b) because it contains 6,699 words, including headings, footnotes, and quotations, but excluding the caption,

21

DEFENDANT JET QUICK, LLC'S MOTION TO COMPEL ARBITRATION OR,
ALTERNATIVELY, TO DISMISS AND INCORPORATED MEMORANDUM OF LAW

table of contents, table of cases and authorities, signature block, exhibits, and any certificates of counsel.

Date: January 26, 2026                    Respectfully submitted,

By: */s/ Jeffrey Gilbert_____ ____*
**JEFFREY GILBERT (Pro Hac Vice)**
Florida Bar No. 375411
Jeffrey.Gilbert@gmlaw.com
Melissa.Fernandez@gmlaw.com
**GREENSPOON MARDER LLP**
600 Brickell Avenue, 36th Floor
Miami, FL 33131
Direct Phone Number: 305-789-2761

**KRISTIN STANKIEWICZ**
Oregon Bar No. 066196
Kristin.Stankiewicz@gmlaw.com
**GREENSPOON MARDER LLP**
555 SE MLK Boulevard, Unit 105
Portland, OR 97214
Direct Phone Number: 971-322-0802

*Attorneys for Defendant Jet Quick, LLC*

DEFENDANT JET QUICK, LLC'S MOTION TO COMPEL ARBITRATION OR,
ALTERNATIVELY, TO DISMISS AND INCORPORATED MEMORANDUM OF LAW

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on January 26, 2026, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certified that the foregoing document is being served this day on all counsel of record identified on the Service List via transmission of Notices of Electronic Filing generated by CM/ECF.

By: <u>*/s/ Jeffrey Gilbert*_____</u>
Jeffrey Gilbert (Pro Hac Vice)
Florida Bar No. 375411

DEFENDANT JET QUICK, LLC'S MOTION TO COMPEL ARBITRATION OR,
ALTERNATIVELY, TO DISMISS AND INCORPORATED MEMORANDUM OF LAW