Andrew Roman Perrong, OSB No. 243320
a@perronglaw.com
Perrong Law LLC
2657 Mount Carmel Avenue
Glenside, PA 19038
215-225-5529
Attorney for Plaintiff and the Proposed Class

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF OREGON
## EUGENE DIVISION

| | | |
|---|---|---|
| CHAD BARNES, individually and on behalf of all others similarly situated, | : | CIVIL ACTION FILE NO. |
| | : | 6:25-cv-2050 |
| Plaintiff, | : | |
| | : | |
| v. | : | OPPOSITION TO DEFENDANT'S |
| | : | MOTION TO COMPEL ARBITRATION |
| JET QUICK, LLC. | : | OR DISMISS |
| | : | TCPA (47 U.S.C. § 227) |
| Defendant. | : | DEMAND FOR JURY TRIAL |
| | : | |
| _____ | / | |

## Table of Contents

**Introduction** .................................................................................................... 1

**Legal Standard** ............................................................................................... 1

**Argument** ....................................................................................................... 3

    A.   There is no agreement to arbitrate because Defendant has adduced no admissible evidence to establish that a website visit even occurred. .......................................................... 3

    B.   There is no agreement to arbitrate because the Plaintiff has provided evidence showing that he never visited the website and thus never agreed to arbitrate. ......................... 11

    C.   The MyDailySurge website does not conspicuously name the Defendant. .......... 17

    D.   The class action waiver is unenforceable for identical reasons. .......................... 22

    E.   A text message "call" is clearly a "call" under the TCPA. ................................... 22

    F.   Plaintiff has standing under the TCPA. ............................................................ 24

    **CONCLUSION** ........................................................................................... 25

## Table of Authorities

### Cases

*Bates v. Andaluz Waterbirth Ctr.*, 447 P.3d 510 (Or. App. 2019) ............................................. 5, 12

*Bazemore v. Jefferson Capital Sys., LLC*, 827 F.3d 1325 (11th Cir. 2016).................................. 18

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ..................................................................... 3

*Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849 (9th Cir. 2022) .................................. 18, 19

*Bradley v. DentalPlans.com*, No. CV 20-1094-BAH, 2024 WL 2865075 (D. Md. June 6, 2024)

................................................................................................................................................. 22

*Campbell v. Gen. Dynamics Gov't Sys. Corp.*, 407 F.3d 546 (1st Cir. 2005). .............................. 6

*Coinbase, Inc. v. Suski*, 602 U.S. 143 (2024) .......................................................................... 3, 4

*Conrad v. Camping World Holdings Inc.* No. 4:24-CV-171-CLM, 2025 WL 66689 (N.D. Ala.

Jan. 9, 2025) ........................................................................................................................ 17

*Crim. Prods., Inc. v. Bekahi*, No. 3:17-CV-00157-AC, 2018 WL 2306685 (D. Or. Apr. 2, 2018)

................................................................................................................................................. 13

*Drury v. Assisted Living Concepts, Inc.*, 262 P.3d 1162 (Or. App. 2011).................................... 5

*Ellis v. Wallet Buddha LLC*. No. EDCV 25-1533-MWF (PDX), 2025 WL 4061562 (C.D. Cal.

Dec. 29, 2025) ............................................................................................................. 8, 10, 11

*Frazier v. City of Fresno*, No. 1:20-CV-01069-DAD-SAB, 2022 WL 1128991 (E.D. Cal. Apr.

15, 2022)............................................................................................................................... 24

*Gilliam v. Prince Health Grp. LLC*, No. 1:24-CV-00033, 2025 WL 1126545 (M.D. Tenn. Apr.

16, 2025).............................................................................................................................. 16

*Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997) .................................................. 2

*Godun v. JustAnswer LLC*, 135 F.4th 699 (9th Cir. 2025) ......................................................... 18

*Grand Wireless, Inc. v. Verizon Wireless, Inc.*, 748 F.3d 1 (1st Cir. 2014) ................................ 4

*Hall v. Smosh Dot Com, Inc.*, 72 F.4th 983 (9th Cir. 2023) .......................................... 24

*Harnisch v. College of Legal Arts, Inc.*, 259 P.3d 67 (Or. App. 2011) ...................................... 5, 6

*Hesse v. Midland Credit Mgmt., Inc.*, No. 4:21-CV-00591-SEP, 2022 WL 503725 (E.D. Mo. Feb. 18, 2022)........................................................................................................ 13

*Hobbs v. Apollo Interactive, Inc.*, No. 4:19-CV-57 (CDL), 2019 WL 6878863 (M.D. Ga. Dec. 17, 2019)........................................................................................................ 15, 16

*Hossfeld v. Allstate Ins. Co.*, 726 F. Supp. 3d 852 (N.D. Ill. 2024)................................. 9

*Howard v. Republican Nat'l Comm.*, No. 23-3826, 2026 WL 90273 (9th Cir. Jan. 13, 2026) .... 23

*In re Van Dusen*, 654 F.3d 838 (9th Cir. 2011) ............................................................... 2

*Interocean Shipping Co. v. National Shipping & Trading Corp.*, 462 F.2d 673 (2d Cir. 1972) .... 2

*Jenkins-Brown v. Liberty Acquisitions Servicing, LLC*, No. 03:14-CV-01610-ST, 2015 WL 1757220 (D. Or. Apr. 16, 2015)........................................................................ 2

*Kass v. PayPal, Inc.*, 75 F.4th 693 (7th Cir. 2023)........................................................ 16

*Keebaugh v. Warner Bros. Ent. Inc.*, 100 F.4th 1005 (9th Cir. 2024)................................... 18, 19

*Klocek v. Gateway, Inc.*, 104 F. Supp. 2d 1332 (D. Kan. 2000)........................................ 6

*Lamps Plus, Inc. v. Varela*, 587 U.S. 176 (2019) ......................................................... 3

*Mantha v. QuoteWizard.com, LLC*, No. CV 19-12235-LTS, 2021 WL 6061919 (D. Mass. Dec. 13, 2021)........................................................................................................ 21

*Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025 (9th Cir. 2008)............................... 3

*Matthews v. Mid City Cannabis Club, Inc.*, No. CV 20-07841 PA (JPRx), 2021 WL 1567496, at *2 (C.D. Cal. Mar. 2, 2021) ........................................................................ 2

*McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, 606 U.S. 146 (2025)..................... 22

*Meyer v. Uber Techs., Inc.*, 868 F.3d 66 (2d Cir. 2017) ............................................... 18

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614 (1985) .................... 4, 5

*N. L. by Lemos v. Credit One Bank, N.A.*, 960 F.3d 1164 (9th Cir. 2020) ................................. 15

*Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171 (9th Cir. 2014) ............................................ 18

*Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505 (9th Cir. 2023) ....................................... 18

*Rent-A-Ctr., W., Inc. v. Jackson,* 561 U.S. 63 (2010) .......................................................... 4

*Revitch v. DIRECTV, LLC*, 977 F.3d 713 (9th Cir. 2020) ......................................................... 2

*Rick Franklin Corp. v. State ex rel. Dep't of Transp.*, 140 P.3d 1136 (Or. App. 2006) ................ 5

*Robert D. Mabe, Inc. v. OptumRX*, 43 F.4th 307 (3d Cir. 2022) ................................................ 6

*Sellers v. JustAnswer LLC*, 73 Cal. App. 5th 444 (2021) ................................................ 18, 19

*Starling v. OnProcess Tech., Inc.*, No. 1:23-CV-10949-JEK, 2024 WL 1258501 (D. Mass. Mar.
        25, 2024) ............................................................................................................ 15

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662 (2010) ....................................... 3

*Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*, 925 F.2d 1136 (9th Cir. 1991) ............... 12

*Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037 (9th Cir. 2017) ................................. 24

*Van Tassell v. United Mktg. Grp., LLC*, 795 F. Supp. 2d 770 (N.D. Ill. 2011) ........................... 16

*Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ.*, 489 U.S.
        468 (1989) ............................................................................................................ 4

*Wilson v. Hard Eight Nutrition LLC*, No. 6:25-CV-00144-AA, 2025 WL 1784815 (D. Or. June
        27, 2025) ............................................................................................................ 23

*Wilson v. Skopos Fin., LLC*, No. 6:25-CV-00376-MC, 2025 WL 2029274 (D. Or. July 21, 2025)
        ............................................................................................................................ 23

*Woodard v. SmartMatch Ins. Agency, LLC*, No. 23 CV 5246, 2024 WL 4252803 (N.D. Ill. Sept.

20, 2024)......................................................................................................... 16

*Zamudio v. Aerotek, Inc.*, 698 F. Supp. 3d 1202 (E.D. Cal. 2023) .................................. 12, 13, 15

**Statutes**

15 U.S.C. § 7001(c) ............................................................................................ 20, 21

15 U.S.C. § 7001(c), (c)(1). ..................................................................................... 21

47 C.F.R. § 64.1200(a)(2) .......................................................................................... 20

47 C.F.R. § 64.1200(c)(2) .......................................................................................... 20

9 U.S.C. § 1 ............................................................................................................... 1

9 U.S.C. § 4 ...................................................................................................... 1, 4, 5

FED. R. CIV. P. 12(b)(6) ....................................................................................... 2, 24

Fed. R. Civ. P. 8(a) ................................................................................................... 2

ORS § 36.625(1) ....................................................................................................... 5

**Introduction**

Defendant Jet Quick, LLC has filed a motion to compel arbitration based on inadmissible hearsay evidence of a purported website visit that Mr. Barnes never visited or submitted his telephone number or a third party's information to. Because Mr. Barnes did not agree to arbitrate his claims against Defendant, Defendant's motion should be denied. Plaintiff's declaration submitted herein confirms he never visited the MyDailySurge website, never saw any of its "Terms," and never agreed to arbitrate with *anyone*, let alone with the Defendant. His declaration denies any site visit, and further explains that he has not had any contact with Ms. Wilcox, his estranged mother, apart from an incident that resulted in the police trespassing her from his property, owing to her struggles with alcoholism. Defendant's hearsay "evidence" of what was purportedly *submitted* on a *third party website* cannot defeat this contrary evidence.

Further demonstrating the improper nature of the relief it requests, Defendant asks this Court to compel arbitration based on *inadmissible hearsay evidence* of *terms* purportedly presented on a promotional website, MyDailySurge.com, that, even if admissible, buries Jet Quick under a hyperlink. Ninth Circuit law provides a related reason for denying Defendant's motion, as it is legally deficient. The aforementioned deficiencies, as well as others, show that the purported arbitration contract is unenforceable as a matter of Ninth Circuit law, and that, relatedly, there exists no basis for dismissal, which has been foreclosed by this Circuit's law.

**Legal Standard**

In evaluating a motion to compel arbitration in a TCPA case, the Federal Arbitration Act ('FAA'), 9 U.S.C. § 1 *et seq*., governs the enforceability of an arbitration agreement. That statute commands that before compelling arbitration of a dispute, the Court must first be satisfied that the parties agreed to arbitrate. 9 U.S.C. § 4 (directing that courts must direct the parties to

arbitration "upon being satisfied that the making of the agreement for arbitration . . . is not in issue"); *Revitch v. DIRECTV, LLC*, 977 F.3d 713, 716 (9th Cir. 2020). Once an enforceable agreement has been established, that is, once a court has determined that there is an agreement to arbitrate, the court must only then turn to whether the particular dispute factually and legally falls within the scope of the agreement. *In re Van Dusen*, 654 F.3d 838, 843 (9th Cir. 2011). The consensus of Ninth Circuit authority is that, like a Rule 56 Motion for Summary Judgment, the Court must view all inferences in the light most favorable to the non-movant and grant the motion only if no reasonable juror could hold that the parties did not agree to arbitrate. *See Jenkins-Brown v. Liberty Acquisitions Servicing, LLC*, No. 03:14-CV-01610-ST, 2015 WL 1757220, at *4 n.2 (D. Or. Apr. 16, 2015) (collecting authority). Under that standard, "An unequivocal denial that" the parties agreed to arbitrate, "accompanied by supporting affidavits," is sufficient to require jury determination on whether the parties agreed to arbitrate. *Interocean Shipping Co. v. National Shipping & Trading Corp.*, 462 F.2d 673, 676 (2d Cir. 1972) (applying Rule 56 standard to arbitration). In such a case, the non-moving party has placed "the question in issue" by showing a material issue of fact on whether the parties had an agreement to arbitrate, and the issue must be decided at a summary jury trial as provided by Section 4 of the FAA. *Id.*

"The Ninth Circuit is particularly hostile to motions to dismiss under Rule 12(b)(6)." *Matthews v. Mid City Cannabis Club, Inc.*, No. CV 20-07841 PA (JPRx), 2021 WL 1567496, at *2 (C.D. Cal. Mar. 2, 2021). Indeed, as it noted, "[t]he Rule 8 standard contains a powerful presumption against rejecting pleadings for failure to state a claim." *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997). Rule 8 requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). The purpose of Rule 8(a)(2) is to "give the defendant fair notice of what the . . . claim is and the grounds upon which

Oppn. to Motions                              2

it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In assessing a Rule 12(b)(6) motion to dismiss, the court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

**Argument**

A.   *There is no agreement to arbitrate because Defendant has adduced no admissible evidence to establish that a website visit even occurred.*

"Arbitration is a matter of consent, not coercion." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 664 (2010). The Supreme Court has held time and time again that, despite the liberal policy favoring arbitration, "consent" remains a "first principle that underscores" all arbitration decisions. *Lamps Plus, Inc. v. Varela*, 587 U.S. 176, 184 (2019). Consent is essential under the FAA because arbitrators wield only the authority they are given. *Id.* The Defendant is not entitled to invoke any arbitration clause against Plaintiff because the factual question of whether he even agreed as a matter of contract is called into issue, as Plaintiff's declaration points out, with admissible factual evidence showing that he never visited the MyDailySurge website. Under Section 4 of the Federal Arbitration Act, a jury *must* decide this as a threshold to the threshold arbitrability matter, if a jury is to consider it as all, as Defendant has utterly failed to meet its burden of demonstrating that an agreement even exists, regardless of delegation, and jurisdiction lies with the Court on this issue, as the Supreme Court explained in *Coinbase*, *infra*.

The Supreme Court recently addressed the proper procedure to follow when conflicts arise as to the enforceability of arbitration contracts. *Coinbase, Inc. v. Suski*, 602 U.S. 143, 143 (2024). The Supreme Court held that the first question in any arbitration dispute must be what the parties agreed to. *Id.* at 145. The Supreme Court clarified that *this* "fundamental" question is one for the *court*, not the arbitrator, to decide, and is driven by contractual interpretation

principles under state contract law. *Id.* In *Coinbase*, the Supreme Court reaffirmed that "where, as here, a challenge applies "equally" to the whole contract and to an arbitration or delegation provision, a *court* must address that challenge." *Id.* at 151 (*quoting Rent-A-Ctr., W., Inc. v. Jackson,* 561 U.S. 63, 71 (2010)). The Court went on to explain that in such cases, just like here, "basic principles of contract and consent require that result. Arbitration and delegation agreements are simply contracts, and, normally, if a party says that a contract is invalid, the court must address that argument before deciding the merits of the contract dispute." *Id.* (quoting *Rent-A-Ctr.*, 561 U.S. at 71 for the proposition that "If a party challenges the validity . . . of the precise agreement to arbitrate at issue, the federal court must consider the challenge before ordering compliance with that [arbitration] agreement."). And the explicit text of Section 4 makes it clear that formation is a *jury* issue, "upon such demand the court shall . . . specially call a jury for that purpose. If the jury find that no agreement in writing for arbitration was made or that there is no default in proceeding thereunder, the proceeding shall be dismissed." 9 U.S.C. § 4. As such, a jury trial is necessary to ascertain if the Plaintiff himself submitted his information to the website alleged and thus agreed to arbitrate, as the evidence in support of this is disputed.

Consistent with the "general proposition" that "a contract cannot bind a non-party," *Grand Wireless, Inc. v. Verizon Wireless, Inc.*, 748 F.3d 1, 9 (1st Cir. 2014), "the FAA does not require parties to arbitrate when they have not agreed to do so," *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989). The FAA commands that, before compelling arbitration of a dispute, the Court must first be satisfied that the parties agreed to arbitrate that dispute. 9 U.S.C. § 4; *see also Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985) ("[T]he first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that

dispute."). And, "[i]f the making of the arbitration agreement . . . be in issue, the court shall proceed summarily to the trial thereof." 9 U.S.C. § 4.

In Oregon, the party arguing the existence of a valid contract to arbitrate bears the burden of proving the contract existed and was formed, and that the *Plaintiff himself* agreed to be bound by the clause, as a matter of black letter Oregon law. ORS § 36.625(1) (effectively mandating a summary trial akin to FAA section 4 if the "refusing party opposes the petition. . . *showing* an agreement to arbitrate"). "Arbitration arises as a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Bates v. Andaluz Waterbirth Ctr.*, 447 P.3d 510, 513 (Or. App. 2019). And a contract requires "a meeting of the minds of the parties, a standard that is measured by the objective manifestations of intent by both parties to bind themselves to an agreement." *Rick Franklin Corp. v. State ex rel. Dep't of Transp.*, 140 P.3d 1136, 1140 (Or. App. 2006). In the arbitration context, the formation inquiry is done by "applying ordinary rules of contract formation and interpretation." *Bates*, 447 P.3d at 513. *Bates* is instructive. There, our very own Oregon Court of Appeals refused to compel, as a matter of contract law, an arbitration agreement where the decedent did not sign the agreement, nor was the decedent otherwise made a party to the arbitration agreement. *Id.* Similarly, in *Drury v. Assisted Living Concepts, Inc.*, the Court of Appeals held that a third-party non-signatory to the contract "certainly cannot be bound to a contract it did not sign or otherwise assent to." 262 P.3d 1162, 1165 (Or. App. 2011).

The *en banc* Oregon Court of Appeals in *Harnisch v. College of Legal Arts, Inc.*, 259 P.3d 67 (Or. App. 2011) provides a clear example of an Oregon state court affirming denial of a motion to compel arbitration based on disputed contract formation. In that case, a student signed the front of an enrollment agreement but failed to initial the specific arbitration clause on the

back, despite a clear request for an initial below the arbitration provision. The trial court found

that the "absence of [plaintiff's] initials tells me that he did not agree to this arbitration

provision," and the Court of Appeals affirmed, holding that the failure to initial was evidence

that plaintiff did not assent to the arbitration clause. *Id.* at 70. Relatedly, courts across the country

are also in agreement that the party seeking to compel arbitration must demonstrate that the party

had adequate notice of the arbitration provision. *See, e.g.*, *Robert D. Mabe, Inc. v. OptumRX*, 43

F.4th 307, 329 (3d Cir. 2022) ("Because it is plausible that a number of the pharmacies were

never given the terms of their Provider Agreements, it is likewise plausible that holding the

pharmacies to the arbitration agreements contained therein would be procedurally

unconscionable."); *Klocek v. Gateway, Inc.*, 104 F. Supp. 2d 1332, 1335 n.1 (D. Kan. 2000)

(noting that Plaintiff had no notice of arbitration clause).

      As the party seeking to arbitrate, the Defendant thus bears the burden of demonstrating, at

the same level as at summary judgment, not only that a valid arbitration agreement exists but

also that the *Plaintiff himself* agreed to be bound by the clause, of which he had adequate notice,

as in *Harnisch*. *See also Campbell v. Gen. Dynamics Gov't Sys. Corp.*, 407 F.3d 546, 552 (1st

Cir. 2005). Defendant is unable to do so for two independent reasons. *First*, and most

importantly, Defendant points to *no admissible evidence* of what was allegedly submitted to a

*third party* website. Its entire motion, and declaration in support thereof, is based on hearsay

testimony both as to what the website contained and what was allegedly submitted to the

website, not admissible evidence. *Second*, these issues are not mere trivialities with respect to

whether the Plaintiff agreed to arbitrate any dispute, which has factual issues.

      Start with the fundamental issues surrounding the admissibility of the Defendant's

"evidence" in support of its contention that a valid arbitration contract even exists as an initial

matter. A review of Defendant's motion, exhibits, and Declaration of Blaine Beichler in support

of the Defendant's motion does not even establish, with *admissible* evidence, of what was

allegedly submitted to the website, and very likely do not establish what the website contained,

either. As an initial matter, all the screenshots attached as Exhibit A to Defendant's motion (ECF

10-2), establish, if anything, was what a visitor to the website (allegedly) *would have* saw on the

date that the screenshots were taken; the same is true of the Terms and Conditions attached as

Exhibit B to Defendant's motion (ECF 10-3). All this "evidence" possibly within Blaine

Beichler's personal knowledge shows is that a website called MyDailySurge allegedly exists,

that the subject Terms and Conditions allegedly appeared on that website at some point, and that

the website looked some way at that point in time. That does not establish that the Plaintiff Chad

Barnes ever visited the website, nor does it establish what the website contained when Plaintiff

(or anyone else) allegedly visited it. Indeed, this no different than saying, "There's a store in

town. It's owned by Sally. Here's a picture I took of Sally's storefront with the red awning on

January 26th. And Sally, the store owner, told me that Chad visited the store in November of last

year. Sally also told me years ago that she would tell me if she ever changed the color of her

store's awning. Therefore, Chad must have visited Sally's store when it had a red awning."

This hearsay issue is a catastrophic issue for the Defendant. Under black letter Oregon

law, as the party seeking to enforce the contract, Defendant cannot even come up with evidence

from the party that purportedly obtained the signed contract itself and has relied only on

inadmissible hearsay evidence in its motion for (1) what the website allegedly even said or (2)

what was even allegedly submitted to it. Indeed, TCPA specific case law is equally clear that if

Defendant wants to rely on a third party website for evidence of an arbitration agreement, it is

incumbent on the Defendant to adduce *admissible* evidence from the website operator, not

simply rely on its own hearsay testimony in a declaration. What Defendant has done in this case is almost exactly what the defendant, *represented by the same firm as here*, did in *Ellis v. Wallet Buddha LLC*. In *Ellis*, the defendant contended that the plaintiff visited and submitted his information into a third party website called LendYou. No. EDCV 25-1533-MWF (PDX), 2025 WL 4061562, at *3 (C.D. Cal. Dec. 29, 2025). Just as here, "Defendant's only evidence of such an agreement is a declaration of Defendant's own CEO, Noam Samson. Samson's declaration is based upon Samson's "personal knowledge" or "documents over which [he has] care, custody, and control." *Compare id.* with ECF 10-1. And, just as here, the defendant claimed that the plaintiff visited the LendYou website and submitted his information. *Id.*

The *Ellis* court identified problems with the defendant's self-serving hearsay declaration, which are also present here. As here, the Defendant "attempts to introduce evidence of the contents of [MyDailySurge's] webpage through [Beichler's] declaration." *Id.* at *5. "But Defendant does not establish how [Beichler] would have personal knowledge of the fact that any action putatively taken by Plaintiff on [MyDailySurge's] website would constitute assent to [MyDailySurge's] arbitration agreement." *Id.* "Even if the Court could conclude that Plaintiff visited the [MyDailySurge] website, submitted his personal information through that website, and that Plaintiff's personal information somehow made its way to Defendant, Defendant has not proven that in submitting that information, Plaintiff necessarily agreed to an arbitration provision, let alone the specific contents of that arbitration provision." *Id.* The same is true of this case. There is "no basis in [Beichler's] declaration to establish [their] knowledge of the content of the [MyDailySurge] website at the time that Plaintiff putatively visited this website." *Id.* Indeed, here, Beichler's declaration doesn't even explain how Beichler is able to make the statement that the "Plaintiff entered the zip code '97402'" or that the "Plaintiff entered the email

address 'wilcoxshirenna@gmail.com' and pressed 'Continue.'" (ECF 10-1 ¶ 17, 20).

What is Beichler's basis for making these statements? Did Beichler personally visit the website and create the screenshots the same day Mr. Barnes is alleged to have visited it, or did she create them after the fact, as the *Ellis* court observed? *Id.* ("[T]he footnote merely underlines that Samson or someone at his direction went to the public LendYou website and took the screenshots of the webpages as they appeared on the particular day that they were investigating Plaintiff's claims. This effort falls short of what would be required to prove what Plaintiff saw when he visited the website in July or September of 2024."). Did Beichler personally observe Mr. Barnes (or any other class member) entering their information into the website? Or is Beichler simply regurgitating what was told to Defendant by the operator of the MyDailySurge website, which would make this a classic case of hearsay? *Hossfeld v. Allstate Ins. Co.*, 726 F. Supp. 3d 852, 873 (N.D. Ill. 2024) ("Allstate's agent [Basit] . . . testified that [Basit] believed that someone using Hossfeld's number opted into receiving calls based on the purported KP Leads spreadsheet. . . . . This testimony comprises the first layer of hearsay. . . . At the next layer, Basit allegedly received the spreadsheet from Atlantic, which purportedly told Basit (this is also hearsay) that the spreadsheet came from KP Leads. KP Leads represented (also hearsay) that the spreadsheet established that Hossfeld's phone number resulted from his opting into receiving calls marketing insurance. . . . . These multiple layers of hearsay, for which no exception or exemption has been established, render the witness's testimony and the spreadsheet inadmissible.").

It's clear that the latter case, simply regurgitating inadmissible hearsay, is the case here. Beichler's declaration makes clear that Beichler's only competent personal knowledge is: (1) what the website looked like *when he reviewed it* (*not* when Plaintiff is alleged to have visited

it); and (2) what data Jet Quick received from MyDailySurge (which could have come from anyone and anywhere). The Declaration itself makes clear that it is relying on inadmissible hearsay testimony. "Put more simply, [Beichler] has not established in [their] declaration that [they are] responsible for developing or updating [MyDailySurge's] webpages or its Request Form, such that [they] would know what content appeared on the webpage at the point in time that Plaintiff visited the webpage." *Ellis*, 2025 WL 4061562, at *5. For that matter, Beichler has also not established that Defendant is the custodian for any information purportedly submitted to the MyDailySurge website; to the contrary, it simply "partners with" (i.e. purchases) "contact information of users" who submit their information to MyDailySurge. (ECF No. 10-1 ¶ 2). And Beichler readily admits that "Jet Quick *received the following information from* MDS," which is to say, that Beichler is attempting to shoehorn hearsay evidence from a third party under the guise of their own declaration, which is impermissible. (ECF No. 10-1 ¶ 52).

Jet Quick may argue that the information it allegedly obtained from MDS falls under the business records exception. But although Jet Quick's own records of what MDS told it may be Jet Quick's business record, the embedded assertions *within that business record* still need a non-hearsay showing from the declarant; otherwise, Jet Quick runs into the same hearsay-within-hearsay problem as in *Hossfeld*. Clearly, MyDailySurge is not Jet Quick, and the declarant is not the custodian for the actual source data; MyDailySurge is. The Beichler declaration is silent as to whether Beichler has any knowledge on MyDailySurge's systems from where the records were obtained, if those records were even kept in the ordinary course of business, or any other evidence authenticating the records as an actual website visit instead of, for example, MyDailySurge simply selling information it obtained from elsewhere that it was passing off as a website visit. Indeed, on this point the declaration itself is internally contradictory, with

Paragraph 6 claiming "first-hand knowledge" of the opt-in process based on "regular auditing" but then, in Paragraph 52, claiming that the data on which Defendant is seeking to compel arbitration was simply "received from MDS," which is to say, transmitted *from a third party*. That is not firsthand knowledge of what happened on MyDailySurge's website. That's hearsay about what MyDailySurge told Jet Quick. Without evidence *from MyDailySurge* showing the truth of the statements Jet Quick attempts to make, all Jet Quick attempts to do is bootstrap hearsay into potentially non-hearsay evidence. The rules of evidence do not operate in this way.

And, *Ellis* makes clear that the Defendant's motion should be denied, **outright**, as a result. "[W]ithout competent evidence to establish the content of LendYou's webpages, the Court is unable to consider the arbitration agreement as it is presented on those webpages. And indeed, as discussed above, at the hearing Defendant was unable to offer even the hope of competent evidence to establish the existence of an arbitration agreement that might cover this dispute." *Id.* at *6. That is indubitably the correct result, as a Section 4 arbitration trial is warranted only when the party seeking to compel arbitration *establishes that one exists*. To be entitled to a Section 4 trial for a jury to determine whether the Plaintiff submitted any information, a defendant needs to adduce *some* evidence that an enforceable agreement exists. When there is "no competent evidence that an arbitration agreement existed in the first place, [] there is no factual dispute to try under § 4." *Id.* This Court should reach the same conclusion as the *Ellis* court in addressing a nearly identical declaration, motion, and applying Ninth Circuit law.

**B.** ***There is no agreement to arbitrate because the Plaintiff has provided evidence showing that he never visited the website and thus never agreed to arbitrate.***

But even *if* this Court were to entertain the possibility that the Defendant has adduced sufficient evidence that a valid arbitration agreement exists (which it cannot, because all it has

adduced is inadmissible hearsay), the Defendant's motion fails because the Plaintiff

unequivocally denies ever having submitted his information to the MyDailySurge website. *See*

*Bates*, 447 P.3d at 513 (denying motion to compel arbitration when the formation of the

purported contract was called into question by demonstration that the party sought to be bound

did not sign it). Notwithstanding the fact that Defendant has not adduced any admissible

evidence as to what was allegedly submitted to the website in the first place, the hearsay

"evidence" it claims to produce is insufficient to show that Mr. Barnes *himself* visited the

website or submitted any information at all, such as (for example), by requiring a code to be sent

to his phone or providing a credit card. *See Three Valleys Mun. Water Dist. v. E.F. Hutton &*

*Co.*, 925 F.2d 1136, 1140 (9th Cir. 1991) (noting that a flipped evidentiary standard "would lead

to untenable results. Party A could forge party B's name to a contract and compel party B to

arbitrate the question of the genuineness of its signature."). This is sufficient to challenge the

validity of the Plaintiff's "signature" or assent to the agreement.

When a plaintiff challenges the validity of a signature on an arbitration agreement, courts

in the Ninth Circuit apply a burden-shifting framework. For example, in *Zamudio v. Aerotek,*

*Inc.*, the defendant met its initial burden of showing that an agreement to arbitrate existed (unlike

here, because it adduces no admissible evidence to meet its burden) by attaching a copy of the

arbitration agreement, but the plaintiff challenged the validity of the signature as

unauthenticated. 698 F. Supp. 3d 1202, 1206 (E.D. Cal. 2023). In denying the motion to compel

arbitration, the Court held that it required detailed evidence about the security procedures

attendant to the alleged website login on which the arbitration agreement turned. *Id.* In doing so,

the court disregarded the defendant's conclusory non-hearsay declaration that asserted that the

plaintiff signed the agreement, without any evidence authenticating the plaintiff or linking the

plaintiff's login to the signature. *Id.*

　　That the purported agreement contained the Plaintiff's telephone number and publicly available information about the Plaintiff's estranged mother accounts for little. At this stage, particularly as this case raises a factual challenge surrounding arbitrability, the Plaintiff is entitled to submit a declaration of his own in support of his position that he did not agree to arbitrate the dispute as an initial matter. *See Hesse v. Midland Credit Mgmt., Inc.*, No. 4:21-CV-00591-SEP, 2022 WL 503725, at *3 (E.D. Mo. Feb. 18, 2022). As the Plaintiff explains in his Declaration, the Plaintiff not only has been put in the unfortunate circumstance of being estranged from his mother for the past several years on account of her alcoholism, but the one time they did interact resulted in the police being called and Ms. Wilcox trespassed from the Plaintiff's property. (Exhibit A).  Moreover, all of the information allegedly "submitted" by Mr. Barnes (or, unconvincingly, Ms. Wilcox), is readily obtained through a simple Google search. Similarly unavailing and insufficient is that the IP address that purportedly submitted Mr. Barnes's information is located in Eugene, Oregon. Oregon is a big state, and Eugene is a big town.  This court has held that, in order to prevail at summary judgment for copyright infringement, for example, a plaintiff "must provide more than an allegation that an IP address is registered to an individual." *Crim. Prods., Inc. v. Bekahi*, No. 3:17-CV-00157-AC, 2018 WL 2306685, at *5 (D. Or. Apr. 2, 2018). Defendant here does not even offer proof that the IP address belongs to Plaintiff and in fact have ignored Plaintiff's requests for consent to send a subpoena to Comcast, the assigner of the IP address, in order to uncover whose IP address it is. Defendant is simultaneously arguing that an IP address proves the Plaintiff's identity and purported agreement while refusing to agree to the one step that would actually verify that claim.

　　It is readily apparent that the Defendant is unable to meet the high burden demanded of it

at summary judgment of affirmatively demonstrating that the Plaintiff himself agreed to arbitrate his claims, particularly in light of his sworn denial, the facts and circumstances surrounding his estranged mother, and the lack of any admissible evidence establishing that any website visit occurred at all. Indeed, Defendant's own declaration, at Paragraph 46 *concedes* that the Plaintiff "*apparently* with his mother" agreed to arbitrate. The word "apparently" is a remarkable hedging concession. Defendant's own declarant admits uncertainty and can't even get its own story straight about who allegedly even submitted the information. What's more, Defendant's own Exhibit B (the Terms and Conditions) contains an express provision stating that "participation must be by the individual entrant." Under the Terms Defendant is trying to enforce, the submission of someone else's information would itself be a violation of those Terms, arguably voiding any resulting agreement from the outset.

To the extent there is sufficient evidence to establish a dispute (and there is not), the matter must proceed to a summary jury trial. To be clear, the Plaintiff unequivocally denies ever having agreed to arbitrate. On face, considering the Plaintiff's own above declaration and evidence, there exist issues with the (lack of) "evidence" proffered by the Defendant, tending to show that the Plaintiff did not agree to arbitrate anything because he didn't even submit any of the information into the website as an initial matter. The Plaintiff confirms these issues and independently verifies that he did not visit the website, had nothing to do with the visit, and thus did not agree to arbitrate anything. (Barnes Dec.). These factual disputes doom Defendant's assertion of arbitration and entitle Plaintiff to a summary arbitrational jury trial to the extent that the Defendant has adduced sufficient evidence.

Despite the Defendant's faulty "evidence" which unequivocally demonstrates that they possess no information that the Plaintiff himself submitted the information, and the Plaintiff's

own denials, Defendant's motion is rife with the false and unsupported assertion that the "Plaintiff" allegedly agreed to the Site's Terms of Use when he allegedly registered and further that he consented to the calls. But, under well-established TCPA and arbitration law, the Defendant must establish that the Plaintiff *himself*, and not someone else, agreed to arbitrate claims. *Zamudio*, 698 F. Supp. 3d at 1206; *Starling v. OnProcess Tech., Inc.*, No. 1:23-CV-10949-JEK, 2024 WL 1258501, at *5 (D. Mass. Mar. 25, 2024) (denying arbitration and holding non-signatory family member was not bound by agreement, despite being listed as an alternate contact on account). It is also well established under the TCPA that consent is associated with the *called party* and *not* the *telephone number* at issue. *See, e.g., N. L. by Lemos v. Credit One Bank, N.A.*, 960 F.3d 1164, 1166 (9th Cir. 2020). As such, an intent to contact *someone else* fraudulently using *someone else's name*, who arguably consented to arbitrate, does not compel *Plaintiff* to arbitrate claims to his *number* which he did not consent. *Id.* at 1167.

Putting aside the obvious hearsay issues here, several decisions in the TCPA context specifically dictate that the Defendant's motion ought to be denied on the basis of the Plaintiff's declaration *alone*. The Middle District of Georgia's decision in *Hobbs v. Apollo Interactive, Inc.*, No. 4:19-CV-57 (CDL), 2019 WL 6878863 (M.D. Ga. Dec. 17, 2019), is particularly instructive. There, a TCPA defendant sought to compel arbitration by contending, as here, that the plaintiff agreed to an arbitration provision as a result of his visits to the defendant's website. In finding no agreement to arbitrate existed based on inconsistencies in the purported website submission, the court explained:

> Plaintiff presented evidence that he "did not visit www.bestautoinsurance.com" and that it would have been impossible for him to access the website in the manner Defendant says he did. . . . Plaintiff stated that he "cannot know for certain who accessed" Defendant's website and input his information, but "[w]hat [he] do[es] know for certain is that [he] did not visit www.bestautoinsurance.com." From this, a reasonable factfinder could determine that Plaintiff did not enter his personal information on Defendant's website or click

> "submit." So, a reasonable factfinder could conclude that Plaintiff did not assent to the website's terms, including the arbitration provision. Accordingly, there is a genuine fact dispute as to whether Plaintiff entered an arbitration agreement with Defendant, and the Court thus cannot conclude as a matter of law at this stage in the proceedings that the parties had a valid agreement to arbitrate. For this reason, Defendant's motion to dismiss in favor of arbitration is denied.

*Id.* at *1-*2 (cleaned up). The *Hobbs* case is one of several in a long line of cases either denying such motions outright or ultimately concluding that a summary arbitration trial was necessary.

*E.g.*, *Woodard v. SmartMatch Ins. Agency, LLC*, No. 23 CV 5246, 2024 WL 4252803, at *3 (N.D. Ill. Sept. 20, 2024) ("Plaintiff's declaration is sufficient to satisfy his evidentiary burden at this stage of the litigation. . . . Because plaintiff has identified facts showing a genuine dispute as to his acceptance of defendant's arbitration agreement, defendant's motion to compel arbitration is denied without prejudice." and setting procedure for arbitration trial); *Gilliam v. Prince Health Grp. LLC*, No. 1:24-CV-00033, 2025 WL 1126545, at *4 (M.D. Tenn. Apr. 16, 2025) ("[O]ther than the fact that Plaintiff's name and phone number were used, Prince Health offers no evidence that Plaintiff was the person who entered the information."); *Kass v. PayPal, Inc.*, 75 F.4th 693, 704 (7th Cir. 2023) (when plaintiff declared that he never received an email with defendant's arbitration terms, he raised a triable issue of fact as to whether a valid arbitration agreement was formed); *Van Tassell v. United Mktg. Grp., LLC*, 795 F. Supp. 2d 770, 789 (N.D. Ill. 2011) ("[T]he Court denies Defendant's joint motion to compel arbitration without prejudice because there is a genuine issue of material fact pertaining to whether Plaintiffs ever viewed the enrollment web pages containing the Terms and Conditions upon which Defendant rely.").

The Court in *Conrad v. Camping World Holdings Inc.* reached a similar conclusion, reasoning that the factual question of whether or not the plaintiff opted in to receive text messages from the defendant on a website containing an arbitration provision was put at issue and denied outright a similar motion to compel arbitration without the need for a summary

arbitration trial. No. 4:24-CV-171-CLM, 2025 WL 66689, at *2 (N.D. Ala. Jan. 9, 2025). There, the court first agreed that its decision "as to whether an arbitration agreement exists is simply a matter of contract," and that when a party does not "sign or otherwise enter the contract, he cannot be bound by its terms." *Id.* The court noted that the defendant provided no evidence to controvert the plaintiff's declaration, as here, that he did not agree to arbitrate any claims because he did not own the telephone number at issue at the time of the alleged opt-in, and thus that the defendant could not "show the parties had a meeting of the minds about arbitrating claims related to the CWH text message service." *Id.*

Accordingly, Defendant has and will be unable to meet their burden of demonstrating even a genuine issue of material fact on the arbitration issue, entitling the Plaintiff to wholesale denial of the motion. The court in *Conrad* did the same, holding as a matter of law that the defendant did not meet its burden of demonstrating a disputed factual issue with respect to the claimed provision to so much as justify an arbitration trial. *Id.* And, like in *Hobbs*, the Plaintiff has made similar allegations of faulty arbitrational facts, including his sleeping habits and browsing history that would show he did not visit the website. 2019 WL 6878863 at *1–*2. And because the Plaintiff agreed to nothing, he did not agree to arbitrate or receive calls.

C.  *The MyDailySurge website does not conspicuously name the Defendant.*

Even if this Court were to consider the inadmissible hearsay "evidence" of what the MyDailySurge website contained, the website flow is insufficiently conspicuous to give inquiry notice that a website visitor was contracting with the Defendant. The legal issue of whether the agreement can extend to Defendant is one that *Coinbase* has made clear that this Court must decide. The question of whether an arbitration agreement formed as a matter of law, as here, between Plaintiff and either Defendant is *not* reserved to the arbitrator, even with a purported delegation provision, as here. While the FAA creates a "presumption of arbitrability" such that

"any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration," "the presumption does not apply to disputes concerning whether an agreement to arbitrate has been made." *Bazemore v. Jefferson Capital Sys., LLC*, 827 F.3d 1325, 1333 (11th Cir. 2016). What's more, the Ninth Circuit has consistently stated that no differences exist in the law of the different states as to internet contract formation, which apply traditional requirements. *Godun v. JustAnswer LLC*, 135 F.4th 699, 708 (9th Cir. 2025) (*citing e.g.*, *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014); *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 855 (9th Cir. 2022); *Oberstein v. Live Nation Ent., Inc*., 60 F.4th 505, 514–15 (9th Cir. 2023)).

Internet contracts are classified "by the way in which the user purportedly gives their assent to be bound by the associated terms: browsewraps, clickwraps, scrollwraps, and sign-in wraps." *Keebaugh v. Warner Bros. Ent. Inc.*, 100 F.4th 1005, 1014 (9th Cir. 2024) (citing *Sellers v. JustAnswer LLC*, 73 Cal. App. 5th 444 (2021). Defendant contends that the instant agreement is a clickwrap agreement. It is not. A clickwrap agreement requires users to click on an "I agree" box after being presented with a list of terms and conditions of use. *See id.* at 15, 20–21. Courts have routinely found clickwrap agreements enforceable. *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 75 (2d Cir. 2017). The same is not true of sign-in wrap agreements. Sign-in wrap agreements "are those in which a user signs up to use an internet product or service, and the sign-up screen states that acceptance of a separate agreement is required before the user can access the service. While a link to the separate agreement is provided, users are not required to indicate that they have read the agreement's terms before signing up." *Sellers*, 73 Cal. App. 5th at 464 (cleaned up). Here, Defendant adduces hearsay evidence to purportedly show that, in order to continue on the website, a user allegedly had to enter their telephone number in to a telephone number and clicking a blue button that said, "Continue." A message in small font, underneath the box to enter

the phone number, but above the "Continue" button allegedly stated:

> By selecting "Continue", I provide my ESIGN signature and express consent for MyDailySurge, Unified Marketing Partners & its Subsidiaries, SnagnGoods, USMsg, MyJobMobile, OMG Sweeps, Best Day Ever Sweepstakes, FamilyRecoveryHub, Dollar-Sensei, CheckGo, Lendli, CZN, Benefitlink, Americas Health, Media Delivery Solutions LLC and Grant-Navigators to contact me at the phone number I provided for marketing and transactional messages, including personal finance, benefits & sweepstakes, via text and calls, which may use automated, manual, prerecorded, or AI technology, until I revoke consent. This applies even if my number is on a "Do Not Call" list. Consent is not required to use this site or obtain goods/services. Click here to proceed without consent. I have read and agree to the Terms & Conditions, including mandatory arbitration, and for resolving disputes and TCPA claim.

Therefore, this is most like a sign-in wrap agreement. *See Keebaugh*, 100 F.4th at 1014 (citing *Sellers*, 73 Cal. App. 5th 444). A sign-in wrap agreement may be an enforceable contract based on inquiry notice if "(1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms." *Berman*, 30 F.4th at 856. To be conspicuous, notice "must be displayed in a font size and format such that the court can fairly assume that a reasonably prudent Internet user would have seen it." *Id*. While terms may be disclosed through hyperlinks, the presence of a hyperlink "must be readily apparent," and "[s]imply underscoring words or phrases ... will often be insufficient to alert a reasonably prudent user that a clickable link exists." *Id.* at 857 (citing *Sellers*, 73 Cal. App. 5th 444).

Here, the site's fonts, designs, and elements are very distracting for the user. They impose a purported time limitation with a ticking time that counts down by the seconds and injects a sense of urgency to receive a "**100% FREE Entry**" by simply confirming the telephone number. The light blue hyperlink to "Subsidiaries," on which second webpage Defendant's name allegedly appeared, appears strangely in the middle of a list of nonsensical and generic company names, like "Unified Marketing Partners," and "FamilyRecoveryHub," in such a manner to make

its status as a hyperlink containing additional company names extremely non-obvious. The same is true of the alleged time limitation. Conspicuously absent from the Defendant's declaration is any indication of how much time was remaining on the timer at the time that a visitor would have submitted their submission. If, for example, the timer indicated that there were only five minutes left, most persons would simply try to click through as fast as possible without being given a sufficient opportunity to review the terms to which they are agreeing, a fact which further undermines the enforceability of the purported sign-in wrap agreement here. This limitation may not give sufficient time for a consumer to conduct inquiry notice as to the mandatory arbitration agreement, let alone who is purportedly bound by the same.

What's more, the purported agreement to arbitrate based on alleged consent to contact the Plaintiff is legally defective and should not be enforced as a matter of law because, despite purporting to collect "my ESIGN signature," the purported agreement does not actually comply with the express requirements of the ESIGN Act. 15 U.S.C. § 7001(c). The FCC's regulations implementing the TCPA require a *signed* writing. 47 C.F.R. § 64.1200(c)(2); 47 C.F.R. § 64.1200(a)(2). Of course, one may elect to obtain electronic consent, including to arbitrate, in lieu of a signed writing. But if one does, that TCPA consent, and any associated arbitration agreement, must comply with the requirements under the E-SIGN Act. 47 C.F.R. § 64.1200(f)(9) (defining prior express written consent and requirements for electronic signatures); *see In re Rules 2012* ¶ 34 ("[C]onsent obtained in compliance with the E-SIGN Act will satisfy the requirements of our revised rule, including permission obtained via [a] website form."). Consent obtained in accordance with the E-SIGN Act's requirements may be sufficient TPCA consent; consent obtained in in violation of those requirements is a legal nullity because it is unsigned. *Id.*

Here, the legal disclosures required by the E-SIGN Act were not included in the purported "Terms of Use" containing the purported arbitration agreement that Defendant has identified. The record is devoid of any evidence even showing an *attempt* to comport with the Act's requirements. Indeed, no part of the website or the "Terms and Conditions" attached to the Defendant's motion indicated the hardware or software requirements for access to and retention of electronic records, nor was any consumer given the opportunity to provide their consent to sign and receive documents electronically. *Compare* ECF 10-3 *with* 15 U.S.C. § 7001(c)(1)(C)(i), (ii). Moreover, the website Terms and Conditions did not give any consumer a "statement" informing them of the procedures for granting or withdrawing consent, or *any* of the other required consumer disclosures, including the very consent to electronic records themselves. *Compare* ECF 10-3 *with* 15 U.S.C. § 7001(c), (c)(1).

A defendant lost a motion for summary judgment on substantively similar issue in *Mantha v. QuoteWizard.com, LLC*, No. CV 19-12235-LTS, 2021 WL 6061919, at *8 (D. Mass. Dec. 13, 2021), based on a substantially similar agreement to that proffered here. In *Mantha*, the Court held that the consent to make calls purportedly obtained via a website was legally deficient because it did not meet the requirements of the E-SIGN Act. *Id.* As a result, in *Mantha*, the court entered partial summary judgment *on behalf of a plaintiff* on the issue of consent. *Id.* As the Court held in *Mantha*, such a failure to obtain the required E-SIGN disclosures is fatal to compliance with the E-SIGN Act and therefore cannot constitute express written consent. *Id.* Relatedly, a failure to do so is also dispositive of the enforceability of the arbitration provision as no legally-binding contract formed as an initial matter. Yet another court similarly denied relief to the defendant at summary judgment based on a nearly identical failure to comply with E-SIGN's requirements. *Bradley v. DentalPlans.com*, No. CV 20-1094-BAH, 2024 WL 2865075,

at *7 (D. Md. June 6, 2024). Therefore, even if the Court were to ignore Defendant's complete lack of evidence of Plaintiff's factual agreement to arbitrate or what the third party website even contained, there is no basis to conclude that the purported agreement was legally sufficient. Because any alleged agreement to arbitrate did not provide conspicuous notice of the arbitration provision, and because the contract does not comply with the provisions of the E-SIGN Act, the Court must also deny the Defendant's motion on independent legal grounds, even if the Court were to hold, *arguendo*, that the Plaintiff agreed to arbitrate something as a factual matter.

### D. The class action waiver is unenforceable for identical reasons.

Defendant relatedly argues that the class claims here ought to be dismissed because the Plaintiff agreed to a class action waiver. However, as explained above, the Plaintiff disputes having ever contracted, and correspondingly, any waiver associated thereto. The contractual analysis, including the rules of evidence regarding hearsay testimony, apply equally to the purported class action waiver as they do to the arbitration provision, rendering the applicable analysis the same.

### E. A text message "call" is clearly a "call" under the TCPA.

Defendant alternatively argues that it is entitled to dismissal because a text message "call" allegedly isn't a "call" under the TCPA. That's wrong. The Supreme Court recently held that courts are not automatically bound by the FCC's interpretations, and should make their own assessment of what the TCPA means. *McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, 606 U.S. 146, 152 (2025). So Defendant sees a chance to swing for the fences: It asks this Court to reject both the FCC's longstanding interpretation and good statutory analysis that multiple judges of this Court had already undertaken  and hold that the Do Not Call List protects only voice calls, potentially upending Do Not Call List protections for millions of Americans.

Luckily for consumers nationwide, Defendant's arguments have been nearly uniformly

Oppn. to Motions                                          22

rejected, including in this Court, and this Court should decline that request, as the Ninth Circuit Court of Appeals did earlier last month with respect to text messages in *Howard v. Republican Nat'l Comm.*, No. 23-3826, 2026 WL 90273, at *3–4 (9th Cir. Jan. 13, 2026) ("a 'text message' constitutes a 'call' within the meaning of the TCPA"). Even before the Ninth Circuit decided *Howard*, this Court has been aligned on this very issue. First, Judge Aiken held in *Wilson v. Hard Eight Nutrition LLC*, No. 6:25-CV-00144-AA, 2025 WL 1784815 (D. Or. June 27, 2025), that "without deferring to the FCC, the Court independently concludes that the FCC got it right. Given the text, structure, and purpose of Section 227(c) and of the TCPA as a whole, a cell phone is presumptively a residential telephone under the TCPA do-not-call provision." Next, in *Wilson v. Skopos Fin., LLC*, No. 6:25-CV-00376-MC, 2025 WL 2029274, at *4 (D. Or. July 21, 2025), Judge McShane held, "It cannot be argued in good faith that text messages are so categorially different from phone calls that the former cannot be considered an invasion of consumer privacy when directed at numbers on the DNC Registry."

Defendant cites to no new authority or additional analysis that would tend to show that this Court arrived at the wrong conclusion in *Hard Eight* or *Skopos*. Indeed, the Ninth Circuit's decision in *Howard* all but confirms that Defendant's theory that a text message cannot be a call has no legs. Simply put, Defendant's theory is premised on the same authorities, including *Jones* and *Davis*, that have already been considered, and rejected, by other Ninth Circuit Courts and in both *Hard Eight* and *Skopos*. In fact, Plaintiff's counsel has been unable to locate a *singular* Ninth Circuit authority dismissing a TCPA case based on a holding that a text message is not a call, which in any event has been foreclosed by the Ninth Circuit's decision in *Howard*, which Defendant does not even address. *Howard* confirms that a "call" under the TCPA includes a text message, even under de novo review after *Loper Bright*. Accordingly, whatever rhetorical

distinction Defendant attempts to draw invoking *Loper Bright* and the out of circuit authorities to which it cites, it cannot overcome controlling Ninth Circuit authority on the meaning of "call," and dismissal on that ground should be denied.

    F. *Plaintiff has standing under the TCPA.*

        As an initial matter, Defendant's attempt to challenge the Plaintiff's Article III standing is appropriately considered under Rule 12(b)(1), not Rule 12(b)(6). *Frazier v. City of Fresno*, No. 1:20-CV-01069-DAD-SAB, 2022 WL 1128991, at *5 n.3 (E.D. Cal. Apr. 15, 2022). That procedural abnormality notwithstanding, Defendant's argument misunderstands both Article III standing and the TCPA, and it has been repeatedly rejected by courts, particularly in this Circuit. Courts both within and beyond this Circuit have long held that the receipt of unsolicited telephone calls, despite the placement of one's number on the Do Not Call Registry, is a harm in and of itself sufficient for Article III standing purposes and is not a mere procedural harm divorced from actual harm as in *Spokeo*.  In *Van Patten v. Vertical Fitness Grp., LLC*, issued after the Supreme Court decided *Spokeo*, the Ninth Circuit held that the receipt of unsolicited calls is itself a concrete injury requiring no allegations of actual harm. 847 F.3d 1037, 1043 (9th Cir. 2017) ("a violation of the TCPA is a concrete, *de facto* injury").

        In *Hall v. Smosh Dot Com, Inc.*, the Ninth Circuit confirmed that *Van Patten* remained good law, and further confirmed that persons who place their telephone numbers on the Do Not Call Registry have suffered a concrete harm for Article III standing purposes, even in light of disputed consent (and, of relevance here, arbitration) allegations. 72 F.4th 983, 991 (9th Cir. 2023) ("[T]he owner and subscriber of a cell phone listed on the Do-Not-Call Registry has Article III standing to bring claims under the TCPA for unsolicited calls or text messages directed to its number."). Again, Defendant fails to cite to either *Van Patten* or *Hall*, two directly on point Ninth Circuit authorities effectively contravening the Defendant's contention that the

Oppn. to Motions              24

Plaintiff has suffered no harm and no injury in fact by receiving the alleged text message calls to his number listed on the Do Not Call Registry.

### CONCLUSION

For all of the foregoing reasons, arbitration should not be compelled and the case not dismissed. If any questions remain, the Court should order discovery or amendment.

RESPECTFULLY SUBMITTED AND DATED this 2nd day of March, 2026.

> s/Andrew Roman Perrong
> Andrew Roman Perrong, OSB No. 243320
> a@perronglaw.com
> Perrong Law LLC
> 2657 Mount Carmel Avenue
> Glenside, PA 19038
> 215-225-5529
> Lead Attorney for Plaintiff and the Proposed Class

### CERTIFICATE OF SERVICE

I certify that I filed the foregoing via ECF on the below date.

Dated: March 2, 2026

> s/Andrew Roman Perrong
> Andrew Roman Perrong, OSB No. 243320
> a@perronglaw.com
> Perrong Law LLC
> 2657 Mount Carmel Avenue
> Glenside, PA 19038
> 215-225-5529
> Lead Attorney for Plaintiff and the Proposed Class