**KRISTIN STANKIEWICZ**
Oregon Bar No. 066196
Kristin.Stankiewicz@gmlaw.com
**GREENSPOON MARDER LLP**
555 SE MLK Boulevard, Unit 105
Portland, OR 97214
Direct Phone Number: 971-322-0802

**JEFFREY GILBERT (Pro Hac Vice)**
Florida Bar No. 375411
Jeffrey.Gilbert@gmlaw.com
Melissa.Fernandez@gmlaw.com
**GREENSPOON MARDER LLP**
600 Brickell Avenue, 36th Floor
Miami, FL 33131
Direct Phone Number: 305-789-2761

*Counsel for Defendant Jet Quick, LLC*

**UNITED STATES DISTRICT COURT
DISTRICT OF OREGON
EUGENE DIVISION**

| | |
|---|---|
| CHAD BARNES, individually and on behalf of all other similarly situated, | Case No.: 6:25-cv-02050-MC |
| Plaintiff, | **DEFENDANT JET QUICK, LLC'S REPLY IN SUPPORT OF ITS MOTION TO COMPEL ARBITRATION OR, ALTERNATIVELY, TO DISMISS AND <u>INCORPORATED MEMORANDUM</u>** |
| v. | |
| JET QUICK, LLC, | **Request for Oral Argument** |
| Defendant. / | |

DEFENDANT JET QUICK, LLC'S REPLY IN SUPPORT OF MOTION TO COMPEL
ARBITRATION OR, ALTERNATIVELY, TO DISMISS AND INCORPORATED
MEMORANDUM OF LAW

1

Defendant JET QUICK, LLC ("Jet Quick"), by and through undersigned counsel and pursuant to Fed. R. Civ. P. 7(b) and 12(b) and LR 7-1, replies in support of its Motion to Compel Arbitration or, Alternatively, to Dismiss the claims asserted in Plaintiff Chad Barnes's Complaint ("Complaint").

## MEMORANDUM OF LAW

### I. INTRODUCTION

Plaintiff self-servingly claims that he never visited, submitted any form to, or agreed to any terms on, MyDailySurge's ("MDS") website to avoid his obligations to arbitrate his claims. Barnes Dec. ¶¶ 7-19. However, Jet Quick has established in the Declaration of Blaine Beichler, Jet Quick's Head of Operations and Business Development, that Plaintiff (or together with his mother Ms. Shirenna Wilcox, in an attempt to defraud MDS and Jet Quick) visited MDS's website, entered personal identifying information (including Plaintiff's phone number), and affirmatively pressed buttons constituting, under Ninth Circuit law, an agreement to the terms and opting in to be contacted by Jet Quick. Beichler Dec. ¶¶ 10-30.

There was no way for Jet Quick to have received Plaintiff's personal identifying information without Plaintiff's traversing through MDS's pathway and clicking the buttons. And Jet Quick would not have sent a Welcome Message to Plaintiff unless Plaintiff assented and opted in. Beichler Dec. ¶ 30. Therefore, Jet Quick has met its burden proving Plaintiff's acceptance of the terms, including the mandatory arbitration provisions, and giving his consent to receive Jet Quick's text messages.

To dispute Plaintiff's opt-in on MDS's website, Plaintiff filed a Declaration (and attached police report implicating his mother Shirenna Wilcox) in support of his response, claiming he did

not visit and had no reason to visit MDS's website.  But Plaintiff revealed the identity of his mother, that she is an alcoholic, and that his mother's information in fact matches the opt-in information received and relied upon by Jet Quick.  Plaintiff claims his mother did not have his permission to visit MDS's website or to submit his phone number to MDS. Barnes Dec. ¶¶ 7, 15-16. However, Plaintiff does not claim it was impossible for him or his mother to be on MDS's website and does not provide more information besides self-serving statements that he has not been in contact with his mother Ms. Wilcox since 2024, which is not confirmed by the police report introduced and relied upon by Plaintiff in his Declaration. *See* Barnes Dec. ¶ 12.

In his Declaration identifying his alcoholic mother Shirenna Wilcox, Plaintiff does not claim that the opt-in information set forth in Defendant's Declaration of Blaine Beichler is incorrect or wrong.  Plaintiff does not state in his Declaration that Ms. Wilcox's name, email address, home address, and date of birth, as received by Jet Quick at the time of the opt-in, are "made-up" or incorrect.  Accordingly, this Court must conclude that the opt-in information Jet Quick received, as set forth in Mr. Beichler's Declaration, is correct, valid and enforceable by Jet Quick.

Further, the police report attached to Plaintiff's Declaration states that Plaintiff's roommate is Chet Michael Wilson, a prolific TCPA plaintiff, who has filed more than 74 federal lawsuits during the past two (2) years.[1] Twelve of Mr. Wilson's TCPA lawsuits have been filed in the District of Oregon. Plaintiff's counsel in this litigation has represented Chet Wilson in 11 out of

---

[1] This Court should take judicial notice of these overly abundant TCPA filings by Plaintiff's roommate, as Plaintiff declares unequivocally his relationship with his roommate in his Declaration.  Plaintiff certainly did not file this Complaint or come to this Court with clean hands. Plaintiff's Declaration exposes Plaintiff's schemes and ploys to mislead and entrap Defendant and this Court.

DEFENDANT JET QUICK, LLC'S REPLY IN SUPPORT OF MOTION TO COMPEL
ARBITRATION OR, ALTERNATIVELY, TO DISMISS AND INCORPORATED
MEMORANDUM OF LAW

3

12 District of Oregon TCPA lawsuits. Like his roommate, Plaintiff Barnes is not new to TCPA litigation as he also has another pending TCPA lawsuit in front of this Court titled *Barnes v. Live Stream Technology Services Inc.*, 6:25-cv-1469-MC (D. Or. 2025), represented by the same counsel. Plaintiff's self-serving Declaration cannot be taken as fact that he is completely unaware of how he allegedly received these "violative" text messages before the filing of this TCPA action. Therefore, Jet Quick has met its burden establishing that Plaintiff (alone or in conjunction with his mother, with correct information of Plaintiff and his mother) opted-in to MDS's website, subjecting Plaintiff to arbitrate his claims.

II. **ARGUMENT**

    A. *The Declaration of Blaine Beichler and the Supporting Exhibits Establish the Making of An Enforceable Arbitration Agreement.*

Plaintiff argues that Jet Quick "has adduced no admissible evidence to establish that a website visit even occurred," claiming Mr. Beichler has a lack of personal knowledge and that Mr. Beichler relies on hearsay. Pl.'s Resp. at 3, 7-11. Yet, Mr. Beichler's Declaration states that he has personal and first-hand knowledge of MDS's website and its terms because he is "responsible for reviewing MDS's customer opt-in flows, Marketing Partners, Terms and Conditions, and Privacy Policy before they are published." Beichler Dec. ¶ 5. "MDS is required to inform Jet Quick of any proposed changes to those opt-in flows, Marketing Partners, Terms and Conditions, and Privacy Policy." *Id.* The opt-in flow and screenshots of MDS's website that support Mr. Beichler's Declaration, Exhibits A and B, "fairly and accurately reflect the content, layout, and information publicly available on the MDS website at the time of Plaintiff's consent on July 26, 2025." And Mr. Beichler has personal knowledge of this because he "reviewed the opt-in flow before Jet Quick was listed as a marketing partner on the MDS website." *Id.* at ¶¶ 11-12.

DEFENDANT JET QUICK, LLC'S REPLY IN SUPPORT OF MOTION TO COMPEL
ARBITRATION OR, ALTERNATIVELY, TO DISMISS AND INCORPORATED
MEMORANDUM OF LAW

4

Jet Quick has satisfied its burden of proof to enforce the mandatory arbitration provisions and to compel arbitration. The point here is evidence – contrary to what Plaintiff argues – does not need to be in admissible form now; it just needs to be capable of being made admissible later, such as through a testifying witness with knowledge, by the distinctive characteristics of the item, or evidence about a process or system that produces accurate results. *See Great W. Capital, LLC v. Payne*, No. 3:22-CV-00768-IM, 2024 WL 4444309, at *4 (D. Or. Oct. 8, 2024) (explaining that the court would not exclude an exhibit as hearsay because it could be presented in admissible form by the person who prepared it or as a business record). Even where a fact is not properly supported or addressed, the Court still may consider the fact undisputed. Fed. R. Civ. P. 56(e).

Analogous here, as the Ninth Circuit explained: "[a]t the summary judgment stage, we do not focus on the admissibility of the evidence's form," e.g., screenshots or hearsay, "[w]e instead focus on the admissibility of its contents." *Sandoval v. Cnty. of San Diego*, 985 F.3d 657, 666 (9th Cir. 2021) (citing *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003)) (rejecting hearsay, relevance, and foundation evidentiary objections at summary judgment); *Lopez v. Cnty. of Los Angeles*, No. 5:21-CV-00290-MEMF-SHK, 2025 WL 2644751, at *4 fn. 5 (C.D. Cal. Sept. 12, 2025) (citing *Fraser v. Goodale*, 342 F.3d 1032, 1036-37 (9th Cir. 2003)); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 324; *Hughes v. Pac. Univ.*, No. 3:21-CV-991-SI, 2023 WL 7497106, at *1 (D. Or. Nov. 13, 2023) (same). Screenshots and websites can be authenticated through affidavits or declarations or live testimony from individuals with knowledge of the process used to capture the evidence. Fed. R. Evid. 901(a); *see Jackson v. City of Yachats*, No. 6:23-CV-00690-AP, 2025 WL 3524372, at *5 (D. Or. Dec. 9, 2025); *Hamera v. Best Buy Co.,* No. 24 C 11909, 2025 WL 1823994, at *4 (N.D. Ill. July 2, 2025).

While denying but assuming arguendo the existence, as Plaintiff claims, of an evidentiary gap, Mr. Beichler's Declaration can be presented in admissible form at trial because of Mr. Beichler's personal knowledge of the MDS website. The screenshots of the opt-in flow are supported by Mr. Beichler's Declaration, which establishes that: "On July 26, 2025, MDS received Plaintiff's agreement to its online Terms and Conditions," which Jet Quick "receive[d] notice and data in automated data transfers directly from MDS and import[ed] into [its] CRM (customer relationship management) platform." Beichler Dec. ¶ 7.

The reason Jet Quick knows Plaintiff (or together with his mother in an attempt to defraud MDS and Jet Quick) entered his phone number is because Jet Quick received the Plaintiff's (1) phone number, (2) click activity, (3) URL used, (4) IP address (linked to Eugene, Oregon), and (5) identifying information. Beichler Dec. ¶¶ 51-54. Jet Quick received Plaintiff's mother Ms. Wilcox's full name, date of birth, email address, and home address. *Id.* This information was then stored and maintained by Jet Quick "in the ordinary course of business" and is "routinely access[ed]" by Jet Quick, which can be introduced as a business record of Jet Quick. Beichler Dec. ¶ 50. If Plaintiff did not click the "Continue" buttons, then the "information would have not been shared with" Jet Quick. Beichler Dec. ¶ 30. Therefore, Mr. Beichler's Declaration, coupled with screenshots of the pathway and the terms of the website, meets the summary-judgment-like standard, and Jet Quick established Plaintiff's walk through of the website and Plaintiff's assent to the terms.

Plaintiff uses a metaphor of a "red awning" to claim that Mr. Beichler has no knowledge of what the website looked like on the date of Plaintiff's opt-in. See Pl.'s Resp. at 7. Following Plaintiff's argument would be like claiming a logical fallacy as a fact. For example, because

DEFENDANT JET QUICK, LLC'S REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION OR, ALTERNATIVELY, TO DISMISS AND INCORPORATED MEMORANDUM OF LAW

6

someone did not witness a murder does not mean that the murder did not occur. Jet Quick already has met its burden: the screenshots accurately show what the MDS website looked like at the time of Plaintiff's consent on July 26, 2025, and Mr. Beichler knows this because he reviewed the opt-in flow. *Id.* at ¶¶ 11-12. Jet Quick is not required (nor would it be reasonable to expect Jet Quick) to sit in the room with Plaintiff and his mother while Plaintiff was on MDS's website for Jet Quick to establish what the website looked like and to establish Plaintiff's visit to the website.

Further, Plaintiff cites to no other TCPA authority besides attempting to use *Ellis v. Wallet Buddha LLC*, No. EDCV 25-1533-MWF (PDX), 2025 WL 4061562, AT *3 (C.D. Cal Dec. 29, 2025) to question Mr. Beichler's Declaration. The *Ellis* Declaration was made by a different declarant with a different set of facts, including a completely different arbitration agreement and website pathway. Here, Mr. Beichler has explained that he has first-hand knowledge of the website pathway and terms as the Head of Operations and Business Development. Beichler Dec. ¶¶ 3-4. Mr. Beichler also relied on the fact that the MDS website is how he has viewed it and that the arbitration provision would bind users, like Plaintiff, to arbitrate with Jet Quick. *Id.* ¶ 9. And Jet Quick would not have Plaintiff and his mother Ms. Wilcox's combined, correct personal information unless Plaintiff opted in. *Id.* ¶¶ 7, 48-52.

Therefore, the Declaration of Blaine Beichler and the supporting exhibits establish Plaintiff's assent to the arbitration agreement and Jet Quick's right to compel arbitration.

    B. ***An Arbitration Agreement Was Formed and Jet Quick Can Enforce the Arbitration Agreement.[2]***

  Just like Plaintiff concedes in his Response, "[c]ourts have routinely found clickwrap agreements enforceable." Pl.'s Resp. at 18; *Meyer v. Uber Techs, Inc.*, 868 F.3d 66, 75 (2d Cir. 2017); *Berman v. Freedom Fin. Network*, 30 F. 4th 849, 855-57 (9th Cir. 2022); *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1177-78 (9th Cir. 2014); *Stover v. Experian Holdings, Inc.*, 978 F.3d 1082, 1086 (9th Cir. 2020). In a clickwrap agreement, like the one in this case, the website presents its terms of use in a "pop-up screen" or hyperlink and the user accepts those terms by clicking or checking a box manifesting agreement. *Chabolla v. ClassPass Inc.*, 129 F.4th 1147, 1154 (9th Cir. 2025); *Gamble v. Penney Opco LLC*, 791 F. Supp. 3d 1203, 1208 (D. Or. 2025) (explaining that clickwrap agreements present "website users with a box which the user may choose to affirmatively check and state 'I agree . . . .'"); *Oberstein v. Live Nation Entm't, Inc.*, 60 F.4th 505, 517 (9th Cir. 2023) (finding it "straightforward" on the facts that notices on the page "explicitly alert the user that by creating an account, signing in, or purchasing a ticket, and proceeding to the next page," the user agreed to the terms.).

  The Declaration of Blaine Beichler walks the Court through Plaintiff's opt-in and consent on MDS's website. Beichler Dec. ¶¶ 10-37. In the pathway, on a page with a question asking for Plaintiff's email address and right above the "Continue" button were clear and conspicuous terms stating that "**By clicking Continue, I agree to receive marketing and promotional emails from**

---

[2] Plaintiff does not dispute or address in its Response Jet Quick's assertions of its third party beneficiary status and its reliance on the doctrine of equitable estoppel to enforce the arbitration agreement. Therefore, Jet Quick reincorporates and relies on its argument in Section C of its Motion to Compel Arbitration or, Alternatively, to Dismiss.

**MyDailySurge . . . and our partners. I also agree to the <u>Terms and Conditions</u>, including mandatory arbitration[.].**" Beichler Dec. ¶ 18; Ex. A at 2 (emphasis added). The terms were laid out right there for Plaintiff to see, and the full Terms and Conditions were hyperlinked in blue, underlined text. *Id.* This properly formed a clickwrap agreement when Plaintiff entered the information and clicked "Continue." *Id.*

Then, on the following page, Plaintiff was asked for a phone number. Beichler Dec. ¶ 21; Ex. A at 3. Right below that was the blank space to place the phone number and right above the "Continue" button were the following clear and conspicuous terms:

> **By selecting "Continue", I provide my ESIGN signature and express consent for MyDailySurge, Unified Marketing Partners & its <u>Subsidiaries</u> . . . to contact me at the phone number I provided for marketing and transactional messages**, including personal finance, benefits & sweepstakes, via text and calls, which mat use an automated, manual, prerecorded, or AI technology, until I revoke consent. This applies even if my number is on a "Do Not Call" list. Consent is not required to use this site or obtain goods/services. <u>Click here</u> to proceed without consent. **I have read and agree to the <u>Terms & Conditions</u>, including mandatory arbitration, and for resolving disputes and TCPA claim.**

Beichler Dec. ¶ 21-22; Ex. A at 3 (emphasis added). Yet again, the terms were laid out directly on the page, and there were hyperlinks to the "Subsidiaries," where Jet Quick is disclosed as a marketing partner, and "Terms & Conditions" appeared. *Id.* When looking at the page, the text stands out as it is displayed in a black font color and a size that is legible to the naked eye. *Id.* Based on the overall look of the website, it does not attempt to hide, obscure, or draw attention away from these terms. *Id.* In fact, the terms take up half of the entire page. *Id.* Therefore, Jet Quick has established the formation of a clickwrap agreement when Plaintiff entered the information and clicked "Continue." *Id.*

Plaintiff claims that Jet Quick has not established a clickwrap agreement, arguing that it is more like a sign-in wrap agreement. Pl.'s Resp. at 18. When it comes to browse-wrap and sign-in wrap agreements, the court can find an enforceable contract "based on inquiry notice theory only if: (1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms." *Gamble v. Penney Opco LLC*, 791 F. Supp. 3d 1203, 1208 (D. Or. 2025) (citing *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 853 (9th Cir. 2024)). Jet Quick also has established inquiry notice if the Court finds that the agreement is a browse-wrap or clickwrap agreement. The hyperlinks on MDS's website are clearly visible and pop out in bright blue text, contrasting from the black font color of the remaining text, alerting Plaintiff that the hyperlinks differ from other plain text and providing a clickable pathway to another webpage. Beichler Dec. ¶ 21-22; Ex. A at 3. Plaintiff would not have had to hover his mouse over otherwise plain-looking text or aimlessly click on words to find the hyperlinks: they are reasonably conspicuous for Plaintiff to see. *Id.*

By clicking the "Continue" buttons, Plaintiff assented to the terms and conditions, which included an arbitration agreement, and Plaintiff should be compelled to arbitrate his claims. *See Gamble v. Penney Opco LLC*, 791 F. Supp. 3d 1203, 1208 (D. Or. 2025); *Oberstein v. Live Nation Entm't, Inc.*, 60 F.4th 505, 517 (9th Cir. 2023).

Plaintiff cites case law about signatures (on physical papers), but those cites do not apply in the context of websites, where the Ninth Circuit already has established that "[a] user's click of a button can be construed as an unambiguous manifestation of assent only if the user is explicitly advised that the act of clicking will constitute assent to the terms and conditions of an agreement."

*Berman,* 30 F.4th at 857. "[T]he notice must explicitly notify a user of the legal significance of the action she must take to enter into a contractual agreement." *Id.* On the page that asked Plaintiff for his phone number, the terms right above the "Continue" buttons told Plaintiff that by pressing "Continue," he "**read and agree[d] to the <u>Terms & Conditions</u>, including mandatory arbitration, and for resolving disputes and TCPA claim.**" Beichler Dec. ¶ 21-22; Ex. A at 3 (emphasis added). The terms and conditions included Plaintiff's waiving his right to assert a class action. Beichler Dec. ¶¶ 40-42. Therefore, Plaintiff had actual notice of MDS's Terms and Conditions and voluntarily agreed to resolve disputes through mandatory arbitration rather than litigation, including disputes with named partners such as Jet Quick.

Further, Plaintiff's argument that the arbitration agreement is "legally defective" and does "not comply with the express requirements of the ESIGN Act" is conclusory and not accurate when analyzing the pathway Plaintiff opted into. Plaintiff cites multiple non-binding cases which instead support Jet Quick's argument. An electronic record of Plaintiff's pressing of the "Continue" buttons, thereby signing the agreement, is enforceable because Plaintiff was "provided with certain disclosures, including how to withdraw consent." *Mantha v. Quotewizard.com, LLC*, No. CV 19-12235-LTS, 2021 WL 6061919, at *8 (D. Mass. Dec. 13, 2021), *report and recommendation adopted*, No. CV 19-12235-LTS, 2022 WL 325722 (D. Mass. Feb. 3, 2022); *Bradley v. DentalPlans.com*, No. CV 20-1094-BAH, 2024 WL 2865075, at *8 (D. Md. June 6, 2024), *motion to certify appeal granted*, No. CV 20-1094-BAH, 2024 WL 5158791 (D. Md. Dec. 18, 2024).

On the pathway page that asked for Plaintiff's phone number, the disclosures explained that "[c]onsent is not required to use this site or obtain goods/services" and gave Plaintiff the option

to "Click here to proceed without consent" a/k/a without his signature. Beichler Dec. ¶ 21-22; Ex. A at 3. The disclosure also states that Plaintiff could "revoke consent" for "marketing and transactional messages" from MDS and its marketing partners. *Id.* However, Plaintiff submitted his phone number and pressed "Continue," assenting to the terms and opting in. *Id.* at ¶ 28. Further, the Terms and Conditions of MDS's website, Exhibit A, contain an "Electronic Signature" section, which explains that the agreement had the "same legal force and effect as a written document signed by you." Ex. A at 8-9. And the "Binding Arbitration Agreement and Class Action Waiver" section explains that Plaintiff "may opt-out of these Dispute Resolution Provisions by providing written notice of [his] decision," thereby satisfying the ESIGN Act. *Id.* at 8. Therefore, Plaintiff's opt-in by pressing the "Continue" buttons constituted his agreement to MDS's terms, which include mandatory arbitration and a waiver of class action claims.

In response to Jet Quick's Motion, Plaintiff submitted a Declaration that claims he is unaware of how Jet Quick received his phone number and his mother Ms. Wilcox's undisputed personal identifying information. *See* Barnes Dec. ¶¶ 15-16.

Overall, Plaintiff's Declaration supports Defendant's Motion to Compel Arbitration rather than Plaintiff's opposition to the Motion to Compel. First, Plaintiff Barnes, just like in his Complaint, fails to allege in his Declaration that he is the "sole" subscriber and user of the phone number at issue. *See* Barnes Dec. ¶ 4. Plaintiff Barnes does not claim it was impossible for him to be on MDS's website on the opt-in date in question. Although Plaintiff Barnes alleges he has not been in contact with his allegedly alcoholic mother Ms. Wilcox since 2024, this is not confirmed by the police report he introduced and relied upon in his Declaration. *See* Barnes Dec. ¶ 12. The police report discusses one incident that occurred on May 16, 2023, a year before Plaintiff claims

DEFENDANT JET QUICK, LLC'S REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION OR, ALTERNATIVELY, TO DISMISS AND INCORPORATED MEMORANDUM OF LAW

12

he has not been in contact with his mother. *See* Barnes Dec. at 4-9. Plaintiff has not provided any information whether he has sought a restraining order or injunction against his mother to substantiate his claim that he had no contact with her at the time of Plaintiff's opt-in. There is also no affirmative denial that he was not in contact with his mother on the day of the opt-in. And Plaintiff unwittingly identifies and reveals in his Declaration and the attached police report his roommate Chet Michael Wilson, an overly prolific TCPA plaintiff. Therefore, Plaintiff's self-serving Declaration cannot be taken as fact that he is completely unaware of how he allegedly received these "violative" text messages before the filing of this TCPA action. In fact, Plaintiff's Declaration supports Defendant's Motion to Compel Arbitration.

### III.    CONCLUSION

Based on the foregoing reply and Jet Quick's Motion to Compel Arbitration or, Alternatively, to Dismiss, and on any additional oral argument and/or evidentiary hearing on the Motion, Jet Quick respectfully respects the Court to enter an Order that directs Plaintiff to proceed to mandatory arbitration, stays this proceeding until such arbitration has been had in accordance with the terms of the agreement, or dismisses the action for failing to state a claim for relief.

### REQUEST FOR EVIDENTIARY HEARING

Defendant JET QUICK, LLC respectfully requests the Court to hold an evidentiary hearing on this Motion to Compel Arbitration.

### CERTIFICATE OF COMPLIANCE WITH WORD COUNT

This reply complies with the applicable word-count limitation under LR 7-2(b) because it contains 3580 words, including headings, footnotes, and quotations, but excluding the caption,

table of contents, table of cases and authorities, signature block, exhibits, and any certificates of counsel.

Date: March 16, 2026					Respectfully submitted,

By: */s/ Jeffrey Gilbert*
**JEFFREY GILBERT (Pro Hac Vice)**
Florida Bar No. 375411
Jeffrey.Gilbert@gmlaw.com
Melissa.Fernandez@gmlaw.com
**GREENSPOON MARDER LLP**
600 Brickell Avenue, 36th Floor
Miami, FL 33131
Direct Phone Number: 305-789-2761

**KRISTIN STANKIEWICZ**
Oregon Bar No. 066196
Kristin.Stankiewicz@gmlaw.com
**GREENSPOON MARDER LLP**
555 SE MLK Boulevard, Unit 105
Portland, OR 97214
Direct Phone Number: 971-322-0802

*Attorneys for Defendant Jet Quick, LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 16, 2026, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certified that the foregoing document is being served this day on all counsel of record identified on the Service List via transmission of Notices of Electronic Filing generated by CM/ECF.

By: */s/ Jeffrey Gilbert*
Jeffrey Gilbert (Pro Hac Vice)
Florida Bar No. 375411